Merrimack, }
April 7, 1914. }

### Mary Boody, *Adm'x, v.* K. & C. Manufacturing Co.

'Mill," as used in subdivision (b), section 1, of the employers' liability act (Laws 1911, c. 163), includes not only a building in which manufacturing is carried on, but also a dam and flume, a mill yard, and ways provided for the use of employees.

A person engaged in any manual or mechanical labor in a shop, mill, factory, or other place, in which power-driven machinery is used and five or more persons are employed, is entitled to the benefits of the employers' liability act if injured by accident arising out of or in the course of the employment.

"Accident" is used in section 2 of the employers' liability act in its popular sense and includes any untoward and unexpected event.

Where a servant is killed by a fall while engaged in work he was hired to perform, and which he had reasonable cause to believe he was expected to perform at that particular time, the fatality is attributable to "accident arising in the course of the employment," within the meaning of that phrase as used in section 2 of the employers' liability act.

Where the evidence in an action brought under the employers' liability act tends to show that a servant killed by a fall from a narrow walk would have escaped injury if a suitable railing had been provided, the absence of any railing warrants a finding of fault on the part of the defendant.

A servant who is injured while undertaking to do his customary work under abnormally hazardous conditions is not chargeable with negligence as matter of law, unless it conclusively appears that the danger was so apparent that an ordinary man with the same knowledge of the situation would not have encountered the risk.

Case, for personal injuries resulting in the death of Erastus S. Boody, the plaintiff's intestate, brought under chapter 163, Laws of 1911. Trial by jury and verdict for the plaintiff. Transferred from the April term, 1913, of the superior court by *Plummer,* J., on the defendants' exceptions to the denial of a motion for the direction of a verdict in their favor and to instructions of the court.

Boody was employed by the defendants to work in and about a mill in which power-driven machinery was used and five or more persons were employed in manual and mechanical labor. The water to drive the machinery was taken from a river and flowed from a dam through an open flume equipped with two racks—one located at the intake and the other near the wheels—to catch the rubbish which came down the stream in times of high water. It was Boody's work to clean the racks whenever they needed cleaning, and when so doing he was expected to stand on a narrow, unrailed

walk and pull the rubbish out of the racks with a rake. The water was high on the morning of the accident and there was rubbish in both racks. When last seen alive, Boody was standing on the walk very near the river and with his back to the stream, with a rake in his hand, attempting to pull some brush out of the rack at the intake. A few minutes later he was missing and could not be found. Twelve days later his body was recovered from the river below the mill. After the drowning a broken rake was found in the flume and a freshly broken rake handle was found in the river.

*Martin & Howe (Mr. Howe* orally), for the plaintiff.

*Jones, Warren, Wilson & Manning (Mr. Manning* orally), for the defendants.

YOUNG, J. By the enactment of chapter 163, Laws of 1911, the legislature intended to change the common law so that one who is injured by accident while engaged in work in which the risks are great and difficult to avoid may be compensated in part, at least, for the loss thereby sustained, if the accident is one arising out of and in the course of the employment, regardless of the cause of his injury (*s.* 2). It seems to have been understood, however, that this change could not be made without the assent of all those affected by it. It was necessary, therefore, from that view-point, to secure the assent of those affected by the act as well as to provide for compensation to the injured. It is the office of section 1 to define those who come within the operation of the act, and of sections 2, 3, and 4 to induce them to accept its provisions. The means devised to induce such acceptance by employers were: (1) To provide that if an employee is injured by accident arising out of and in the course of the employment, caused in whole or in part by the negligence of his employers or of their servants or agents, the employers shall be liable to the employee for all the loss he sustains, and he "shall not be held to have assumed the risk" of his injury, but there shall "be no liability under this section for any injury to which it shall be made to appear by a preponderance of evidence that the negligence of the plaintiff contributed" (*s.* 2); and then (2) to relieve employers who accept the act in accordance with the provisions of section 3 from the burdens imposed on them in section 2. In other words, the means the legislature devised to induce employers to accept the provisions of the act was to take from those who do not

accept it about the only real defence to an action by a servant which is open to his employer at common law.

Since the defendants have not complied with the provisions of section 3, the question of law raised by their first exception is whether it can be found: (1) That the intestate was engaged in one of the employments described in section 1; (2) that he was injured by accident arising out of and in the course of the employment; (3) that their fault contributed to cause his injury; and (4) that he was free from fault.

1. One of the employments described in section 1 is "work in any shop, mill, factory, or other place, on, in connection with, or in proximity to any hoisting apparatus, or any machinery propelled or operated by steam or other mechanical power, in which shop, mill, factory, or other place five or more persons are engaged in manual or mechanical labor." The word "mill" may be used as meaning a building in which manufacturing is carried on. It is, however, often used as meaning a manufacturing establishment, and when used in this sense it includes all that is usually intended by the plant of a manufacturing concern; that is, it includes not only the buildings in which the work is done, but everything appurtenant to them. The description of an accident that will entitle an employee to the benefits of the act as one caused by any defect in the employer's "plant" (s. 2) tends to the conclusion that that is the sense in which the word "mill" is used in section 1, and so does the context; for "employment" (b) is described as "work in any shop, mill, factory, or other place"—not other building, as it probably would be if the words mill, shop, and factory were used in that sense. As there is nothing to rebut this presumption, it must be held that "mill," as used in section 1, includes not only the building in which the defendants' business is carried on, but their dam, flume, yard, and the ways they provide for the use of their employees. 27 Cyc. 511, II, B; 20 Am. & Eng. Enc. Law 674, note, Common Usage; Webster New Int. Dict., Mill; 6 Cent. Dict., Mill. The intestate, therefore, was engaged in employment (b), and the plaintiff is within the operation of the act unless, as the defendants contend, the employee's injury must be caused by a particular risk peculiar to the employment in which he is engaged in order to bring him within the provisions of the act.

It will be necessary, therefore, to consider what the legislature intended when it enacted: "This act shall apply only to workmen engaged in manual or mechanical labor in the employments described in this section" (s. 1). The section describes five separate

employments, (a), (b), (c), (d), and (e), and there are certain risks peculiar to each which probably induced the legislature to include those exposed to them within the operation of the act; for the dangers incident to these risks are great and difficult to avoid. Since this is so, the defendants say it follows that a person engaged in one of those employments is not entitled to relief unless his injury results from the particular risk which induced the legislature to include those engaged in these employments within the operation of the act. To be more specific: They say that a person who is injured while at "work in any shop, mill, factory, or other place" is not entitled to the benefits of the act, notwithstanding he is injured by accident arising out of and in the course of his employment, unless his injury is caused either by the negligence of a fellow-servant, or by one of the risks incident to work "on, in connection with, or in proximity to" power-driven machinery; that is, unless his injury is caused by one of the risks which induced the legislature to include those engaged in employment (b) within the operation of the act. They say that "not every employee in a given business or establishment covered by the act is within its protection, but only those workmen . . . who are endangered" by the dangerous agencies described in the act, "while in the scope of their employment." Is this contention sound?

It will be helpful when considering the question to remember that it is the office of section 1 to limit the workmen who come within the operation of the act, and of section 2 to describe an accident that will entitle such workmen to its benefits. In the final analysis, the defendants' contention is that the words "workmen engaged in . . . work in any shop, mill, factory, or other place, on, in connection with, or in proximity to" power-driven machinery, are descriptive of an accident—not an employment—which will bring a workman within the operation of the act, or that those words were intended to limit the accidents that will entitle those engaged in such work to the benefits of the act. The act, however, says that it applies "to workmen engaged in manual or mechanical labor in the employments described in this section"—not to those who are injured while engaged in any one of those employments by the particular risk which induced the legislature to include those engaged in it within the operation of the act; and there would be more force in the defendants' contention if it were not for the fact that the description of employment (d)—all work necessitating dangerous proximity to steam boilers and explosives—concludes: "Provided injury is occasioned by the explosion of any such boiler or explosive."

The fact that the legislature expressed an intention to limit the operation of the act, in so far as persons engaged in the employment are concerned, to those who are injured as a result of the particular risk it had in mind when it described the employment, negatives an implied intention to limit the operation of the act in the same way in so far as those engaged in the other four employments are concerned. In other words, it is probable that if the legislature had intended to limit the benefits of the act, in so far as these four employments are concerned, to those who are injured by the particular risk that induced it to include them within the operation of the act, it either would have omitted this proviso from the description of (d), or included similar provisos in the descriptions of (a), (b), (c), and (e). The fact that the legislature added this proviso to the description of one and omitted similar provisos from the description of the other employments, when taken in connection with the fact that the declared purpose of section 1 is to limit the workmen to whom the act applies and of section 2 to describe the accidents which will entitle them to its benefits, makes it certain that those who are injured in an accident described in section 2, while engaged in employments (a), (b), (c), and (e), are entitled to the benefits of the act, both when their injuries are and when they are not caused by the particular risk which induced the legislature to include those engaged in their employments within the operation of the act. In short, there is nothing in the act to show an intention to confine its benefits, in so far as those engaged in employment (b) are concerned, to employees who are injured either by the negligence of a fellow-servant or by coming in contact with power-driven machinery. A somewhat similar provision of the English workmen's compensation act of 1897 (60–61 Vict., c. 37) is construed in the same way. *Maude* v. *Brook*, [1900] 1 Q. B. 575.

Any person, therefore, who is engaged in manual or mechanical labor in any shop, mill, factory, or other place, by whatever name known, in which shop, mill, factory, or place power-driven machinery is used and five or more persons are employed, is engaged in employment (b) and is entitled to the benefits of the act if he is injured "by accident arising out of and in the course of the employment."

2. This brings us to the question whether it can be found that the intestate lost his life in such an accident. The words "by accident arising out of and in the course of the employment" are found in many (perhaps in most) employers' liability and workmen's compensation acts. As these acts are construed, any untoward and unexpected event is an accident. *Fenton* v. *Thorley & Co.*, [1903]

A. C. 443. That is, "accident" is used in its popular sense. Since this is so, the intestate met his death by accident unless he jumped into the river to kill himself. It can be found, therefore, that his death was accidental. The next question to be considered is whether the accident was one arising out of and in the course of his employment. The accident arose out of the intestate's employment, within the meaning of all the cases; but while there is nothing that can be called a consensus of opinion as to what constitutes an accident (*Bryant* v. *Fissell*, 84 N. J. Law 72; *Parker* v. *Hambrook* 107 L. T. Rep. 249,—28 Ann. Cas. 1; *Fitzgerald* v. *Clarke*, [1908] 2 K. B. 796), most of the cases that have been decided since 1902 would have been decided as they were, if the test that is applied to determine whether an employee was acting within the scope of his employment when he was injured had been applied to determine whether the employee was injured by accident arising in the course of the employment. For a review of the authorities on this question, see an article by Professor Bohlen in 25 Harvard Law Review and note in 28 Ann. Cas. 4–21. Therefore, the method which should be employed in this case to determine whether the intestate was injured by accident arising in the course of the employment is to inquire whether it can be found (1) that he was cleaning the rack at the intake when the accident happened; and if it can be, (2) whether he thought the defendants expected him to clean it that morning.

It is true that no one saw the accident, but the intestate was seen at or about the time it happened, and at that time was standing on the walk very near to the river, with his back toward the stream, trying to pull some bushes out of the rack with an ordinary garden rake. As no one saw just what happened, it is fair to ask what would have been likely to happen if the rake handle broke or the bushes gave way suddenly. It is clear that if either of those things happened he might lose his balance and strike his head on the rocks in the river. The marks that were found on his body tend to the conclusion that that was just what did happen. It can be found, therefore, from the evidence as to where he was standing about the time the accident happened, his position with reference to the river, and the work he was doing at that time, taken in connection with the evidence as to the rocks in the river and the marks found on his body, either that the rake handle broke, or that the bushes on which he was pulling gave way suddenly, and that he lost his balance and in falling struck his head on the rocks and was killed. In other words, it can be found that he was cleaning the rack at the intake when the accident happened.

Can it be found that he supposed the defendants expected him to

clean that rack that morning? His foreman testified that it was the intestate's duty to clean the rack when it needed cleaning, but said he told him not to clean it that morning, but to clean the rack at the wheels and then report for work. There was evidence, however, to warrant a finding that no such instructions were given. It can be found that both racks needed cleaning and that it was reasonable for the intestate to think he was expected to clean them. Consequently it can be found that he was doing what he was employed to do, and doing it in the way he was expected to do it, when the accident happened. In other words, it can be found that he was killed "by accident arising .. . . in the course of the employment." *De Fazio* v. *Company*, (N. J.) 88 Atl. Rep. 705; *Zabriskie* v. *Railroad*, (N. J.) 88 Atl. Rep. 824.

3. It can be found that the defendants were in fault for not railing the walk, and that if it had been properly railed the accident would not have happened; in other words, that but for their fault the accident would not have happened.

4. Can it be found that the intestate was free from fault? The defendants contend that he was negligent in undertaking to clean the racks that morning. The test by which to decide that question is the answer to the inquiry whether the ordinary man with his knowledge of the situation and its dangers would have undertaken the work. Although the intestate knew the walk was wet and slippery, as well as unrailed, and that if he lost his balance he might fall into the river, it cannot be said that all fair-minded men must agree that the risk incident to doing the work that morning, because of the condition of the walk or the character of the instrumentalities the defendants provided, was so great or the danger so apparent that the ordinary man with his knowledge of the situation and its dangers would not have encountered it. Consequently it cannot be said as matter of law that he was in fault for encountering it.

There is no merit in the defendants' contention that the instructions excepted to were calculated to give the jury the impression that the statute permitted a recovery even though the accident would not have happened but for the intestate's negligence. It is enough to say that no such inference can be drawn from the charge. In fact, the jury were told in so many words that the plaintiff could not recover unless they found "from the evidence" that the intestate's carelessness did not contribute to cause his death.

*Exceptions overruled.*

Plummer, J., did not sit: the others concurred.