NEW JERSEY MISCELLANEOUS REPORTS. 381

Essex County Court of Common Pleas—Holzwarth v. Hedden, &c., Co.

## ESSEX COUNTY COURT OF COMMON PLEAS.

### LOUISE HOLZWARTH, petitioner,

*v.*

### HEDDEN IRON CONSTRUCTION COMPANY, respondent.

**Workmen's Compensation—Death Resulting from Ulcer Which Had Been of Long Standing and Was Brought to Climax by Extra Strain, Resulting from Performance of His Work**

On appeal from an award made by New Jersey Workmen's Compensation Bureau (Harry J. Goas, deputy commissioner).

*Mr. Wilbur A. Heisley,* for the petitioner.

*Messrs. Lindabury, Depue & Faulks* (by *Mr. James E. M. Tams*), for the appellant-respondent.

STICKEL, JR., J.

On June 5th, 1922, at about four-thirty P. M., the decedent, William H. Holzwarth, while working as a "layer out," an occupation which required the lifting and piling up for the crane of large pieces of steel weighing from two hundred to two hundred and fifty pounds, and in the doing of which two men were at least usually employed, but which the decedent, on the day in question, had been doing alone, suddenly stopped his work complaining of a severe pain in the region of his stomach. At the suggestion of a fellow-workman, named Link, he went to the toilet but the pain persisted. He collapsed and finally had to be taken home in an auto, where, after a bad night, Dr. Epstein, who was called into consultation by the family physician, diagnosed his trouble as a per-

forated duodenal ulcer, operated and found a hole in the duodenal about as big as a ten-cent piece and a milky fluid flowing therefrom, a confirmation of his diagnosis. After about three weeks the decedent returned home, and in three days after complaining of pain where the incision in the stomach had been made, turned blue, became unconscious and died. It seems to be agreed that the decedent had had a duodenal ulcer for a long time before June 5th, 1922, and that he had suffered with stomach trouble before.

The petitioner claims that the extra exertion due to lifting the steel unassisted caused the perforation of the duodenal and the death of the decedent, while the respondent submits that the proof does not sustain this claim, but at best tends to show that the rupture may have been caused by strain, but might just as well have been caused by the ulcer eating through the duodenal, the normal cause of such an ulcer, with the probabilities pointing to the latter as the cause for the rupture, and that in any event the respondent had neither notice nor knowledge of the injury.

I have read and reread the testimony and carefully examined the useful briefs of counsel and have come to the conclusion that the petitioner must succeed.

It seems to me more than a coincidence that this long-standing condition of the duodenal should culminate just when he was doing a usual task in an unusual manner. It seems to me more than a coincidence that just when he was lifting alone heavy steel beams, this ulcer should perforate the duodenal; that a skilled surgeon like Dr. Epstein learning what had taken place and examining the board-like condition of the man's stomach should diagnose it as a rupture of the duodenal, and I am persuaded that the logical, natural, probable cause of such rupture was the unusual exertion incident to the unassisted lifting of the said beams.

The argument that the rupture might have been caused by his use of the toilet does not appeal, first, because if so it destroys the force of respondent's claim that a strain would not produce the rupture; secondly, because if a strain inci-

dent to the use of the toilet would produce the disastrous result, how much more likely is it that the strain incident to the said lifting would do so, and thirdly, the cramp, or pain, in or near the stomach which first caused the decedent to stop work and which continued unremittingly was first felt before he went to the toilet. And it is significant that the decedent himself seemingly did not regard the pain as a stomach pain as to me appears from the following interchange between Link and himself:

"*A.* Why, about half-past four he came up to me and he said, 'Jes's, Jack, I got an awful pain in my stomach.' I said, 'What happened?' So he said to me, 'I don't know.' I said, 'Well, maybe you have got cramps.' He said, 'I don't know;' he said, 'If it is anything I ate.'

"*Q.* He said what?

"*A.* He said, 'I don't think I ate anything wrong.' "

Nor does the contention of the respondent as presented by Dr. Walter S. Washington impress—that is, that a strain could not cause a rupture of the duodenal even where the ulcer had all but eaten through, particularly in the light of the treatment which the said doctor testified he would prescribe for such an ulcerous condition, and especially when compared with the logical reasons given by Dr. Epstein for his contrary opinion, Dr. Epstein whose diagnosis was so accurately confirmed by the operation. It is also interesting to note that Dr. Washington states that the "punched out appearance," a term used by Dr. Epstein in describing the appearance of the duodenal where the ulcer came through, is proof positive that the ulcer ate through, and that if the rupture had been caused by strain the wall of the duodenal would be ripped, torn; the perforation would have roughened edges. I say it is interesting to note this, because while Dr. Epstein did say it seemed as though it was punched out he explained that by saying "it wasn't like a cut out ulcer. It had irregular edges."

Furthermore, it is difficult to see how the decedent could have lifted and piled the steel beams alone without some con-

siderable pressure against his body in the region of this ulcer, and having done this all day until about four-thirty P. M., it would seem that even the direct force which Dr. Washington says must be applied in order to rupture, was in all probability actually applied. The case, it seems to me, is very much like the case of *Voorhees* v. *Smith et al., 92 Atl. Rep. 280,* cited by the petitioner, and well within the principle and reasoning of that decision.

The argument that Holzwarth's death was not due to the rupture of the duodenal and the operation therefor, overlooks the testimony that unless all the milky fluid which flowed from the rupture was successfully washed out, peritonitis would set in; that it had been flowing for some time when the operation was performed; that in the hospital he was better some days than others; that when discharged he still had a temperature; that his discharge was not so much one based upon cure as it was based upon the financial necessities of the man and the belief of Dr. Epstein that his devoted wife and family doctor could give the man adequate care; that neither Dr. Epstein nor Loux treated him for anything but the said ulcerous condition; that the pain which followed his getting out of bed and sitting on the porch was at the point where the incision for the operation was made, and that Dr. Epstein intended a further operation after the man became stronger to complete the cure of the decedent.

Whether peritonitis set in, as would not be unlikely as I read the testimony, or whether death was due to an embolism consequent upon allowing him to get up too soon, it is difficult to see how the man's death could logically be attributed to anything other than the rupture and the consequent operation, unless, of course, one is prepared to guess or speculate.

One point remains to be considered, that the respondent had neither notice nor knowledge of the injury. It is to be noted that the statute does not require notice or knowledge of an "accident," but merely of an "injury," so that no responsibility would attach to decedent or petitioner to make a specific claim within the statutory period that the decedent had met with an accident.

The respondent had, through its foreman, all the knowledge of the circumstances surrounding the collapse of the decedent; that the decedent had and that was offered before the court. This information the foreman, Jack Emmenberg, received the next day, and a clerk of the respondent notified the insurance company, which insured the respondent, of the occurrence, and did so on an accident form blank, while the superintendent of the company knew of the decedent's prior trouble—his hemorrhages two years before—and even of a spell of stomach trouble a. short time before June 5th, 1922.

Under these circumstances, the argument that the respondent did not possess knowledge of the injury is without merit. It may not have considered that the injury was the result of an accident for which it was responsible, but it seems clear to me that it knew the decedent had in fact been injured.

Judgment for petitioner.