MAY RICHTER, PETITIONER-PROSECUTOR, v. E. I. DU PONT DE NEMOURS & COMPANY, RESPONDENT-DE-FENDANT.

Argued May 17, 1937—Decided July 9, 1937.

Before Justice DONGES, sitting alone.

For the prosecutor, *George G. Tartar.*

For the defendant, *Edwin Joseph O'Brien.*

DONGES, J.   This case is before me on a rule to show cause why a writ of *certiorari* should not issue to review a judgment of the Salem County Court of Common Pleas in a workman's compensation case.   It has been stipulated that, if I concluded a writ should issue, the case should be considered by me upon the merits as if a writ had been allowed.   This has been done.

The workmen's compensation bureau allowed compensation to the prosecutor for the death of her husband, Frank S. Richter, as the result of an accident alleged to have arisen out of and in the course of his employment by the defendant. Richter died on February 6th, 1934, of lobar pneumonia which prosecutor contends he contracted as the result of exposure in a cold, damp, unheated building where he worked

approximately from twelve-thirty P. M. to three-thirty P. M., on January 26th, 1934. The testimony was that the building in which he and a fellow workman, Nash, worked on this day was a concrete storage building, without windows, with floor of dirt, in part at least, and with an opening in the wall, designed to permit the operation of a conveyor belt which was no longer operated, through which opening the elements could enter. The evidence was that the building was damp and was colder than the outside; Nash estimated about fifteen degrees colder and a test conducted by defendant's employes in March, 1934, showed a temperature 2.2 degrees colder than outdoors. Nash testified that on the day in question he went outside several times to get warm.

Decedent suffered from a cold for several days before he spent the three hours in the storage building. He came to work on the following day, but on returning home called his physician and was found to have pneumonia, from which he died ten days later.

The bureau found that decedent had been subjected to exposure of such nature as to meet the requirements in cases of this character for the awarding of compensation. The Common Pleas Court held "it appears from the testimony that persons attached to the carpenter shop were sent to work in the press-plate shop; that decedent had been there on other occasions and that on the day of the alleged 'accident' petitioner was accompanied by one other carpenter. Therefore, the employment of the decedent did not subject him to any greater exposure than that to which persons generally in his locality were exposed."

With this conclusion I am unable to agree. In *Kauffeld* v. *G. F. Pfund & Sons,* 97 *N. J. L.* 335; 116 *Atl. Rep.* 487, it is stated:

"The rule is that, when the employment brings a greater exposure than that to which persons generally in that locality are exposed, injury or death resulting therefrom, such injury or death does arise out of the employment."

Clearly such a situation is shown by the uncontradicted testimony in the instant case. It is not denied that the build-

ing where decedent was working was damp. It was colder than outside; how much colder is in dispute, but unquestionably it was colder. Persons generally in the locality were not exposed to that lower temperature nor to the increased dampness prevailing within the concrete walls of this unheated building. The fact that others did on occasion work in the same place and that on the day in question another workman accompanied the decedent makes no difference. It is not necessary that one should be alone exposed or that all others similarly exposed should sustain the same effect. Conditions of general health and natural resistance enter into the matter. The exposure must be greater than that to which persons *generally* in the locality are subjected, and the proofs show that that was the case here.

I find, therefore, that there was such an exposure as to make injury or death resulting therefrom compensable.

The other question is whether or not the proofs show that the pneumonia contracted was the result of the exposure to which decedent was subjected. As was said in *Dupre* v. *Atlantic Refining Co. (Conn.)*, 120 *Atl. Rep.* 288:

"Pneumonia is caused by the pneumococcus germ, which may be resident in the human system and remains innocuous until, through a cold, traumatism, exhaustion, exposure, or other cause, the resistance of the respiratory tract to infection is lessened. When such lessened resistance occurs, the germ becomes active and the disease sets in."

The proofs show that Richter had been suffering for several days from a head cold. He had been treated at the dispensary at the defendant's plant several times for it on the days immediately preceding January 26th, 1934. It is well known that colds develop into pneumonia. The decedent's attending physician testified as follows:

"He told me he had not been feeling well for about a week, and that he had been taking medicine from a dispensary where he worked and that he wasn't getting any better, and that they sent for me. He said that they put him in a concrete building down there, and he couldn't stand it and he had to get out and lay up against a radiator before he went

home, in order to get warm, so from exposure to the elements I think, that hastened the contraction of pneumonia."

While not very artistically worded, it seems to me that the plain purport of this testimony is that because of the exposure in the cold damp building, the decedent's cold had developed into pneumonia. Nothing else happened, as far as the evidence discloses, which could have contributed to its development; no trauma or other exposure. So, I think the fair inference from all the testimony is that decedent, being afflicted with a cold, contracted pneumonia as the result of the exposure on the afternoon of January 26th, 1934.

Defendant complains of the admission into evidence of that part of the doctor's statement above quoted which refers to what decedent told him about his exposure, relying on *Helminsky* v. *Ford Motor Co.*, 10 *N. J. Mis. R.* 1042; 162 *Atl. Rep.* 189; *affirmed*, 111 *N. J. L.* 369; 168 *Atl. Rep.* 420. The holding of that case was that a statement to a physician could not be admitted for the purpose of establishing that an accident arising out of and in the course of the employment had happened. It is not being used for that purpose here. The exposure was proved by the testimony of Nash and the foreman, Stout. If there had been no evidence of such exposure, it would have been improper to permit the physician to testify to the effect of exposure on the decedent; but there was such evidence. It was therefore proper to permit the doctor to give his opinion as to the effect of the exposure on his patient.

I conclude that the judgment of the Salem County Court of Common Pleas should be reversed, and the determination of the workmen's compensation bureau should be affirmed.