HILDA HENTZ, ADMINISTRATRIX, ETC., PETITIONER-RESPONDENT, v. JANSSEN DAIRY CORPORATION, PROSECUTOR.

Submitted May 3, 1938—Decided October 13, 1938.

Before Justices TRENCHARD, PARKER and PERSKIE.

For the prosecutor, *Coult, Satz & Tomlinson* (*John F. Francis,* of counsel).

For the petitioner, *Abraham Gottlieb* (*Maurice C. Brigadier* and *Theodore S. Chazin,* of counsel).

The opinion of the court was delivered by

PARKER, J. This is a workmen's compensation case. There was an award of compensation in the bureau, after a hearing in which Christopher Malley, the workman, testified in his own behalf. Later, he died, and his widow was substituted. She in turn died, and the administratrix of her estate is now the substituted petitioner. The award was sustained in the Common Pleas on appeal, and the judgment of that court is brought up under the present writ.

We conclude that the award was erroneous. It may be assumed that deceased was attacked by disease of the heart (called coronary thrombosis) while in the course of his employment. It may further be conceded for present purposes that this attack arose "out of the employment" in the sense intended by the statute. But we fail to find any evi-

dence pointing to the occurrence of an "accident" in the true meaning of that word.

Deceased was the driver of a milk truck making retail deliveries at the houses of customers. His regular duties were exacting and laborious. He lived in Guttenberg, Hudson county. His daily round of work was as follows: Waked by alarm clock at one A. M.; wife arose and made coffee for him; left the house at one-thirty, reporting at Ninth and Jefferson streets, Hoboken; checked the battery of his truck (apparently an electric one, but the point seems immaterial); loaded the truck with cases of milk; and about two A. M. proceeded to make his deliveries. The route included the very steep westerly slope of Bergen Hill, between Tonnele avenue and Secaucus road. He had been employed for ten or twelve years in this kind of work, and on this particular route for three years. On the day in question, March 4th, 1936, he returned to the Hoboken plant, turned in his statement, and went home at about two P. M., and so far as appears, that was the usual hour. In addition to the steep slope of the cross streets, the surface all that winter was "very snowy" to use petitioner's language; so that the truck could not be run on the cross streets, and to make deliveries it was necessary to walk short distances up and down the steep grade, delivering milk and reclaiming empty bottles. This condition of ice and snow had persisted for the entire winter (of 1935-1936) as he himself testified. The steep slope was of course as old as the hill itself. In the face of these conditions, which may fairly be characterized as chronic and usual for that season, petitioner had worked all that winter. There is nothing to indicate that what he did that morning differed in any material particular from what he had done every other morning when working under those conditions. He stopped at the corner of Thorne street and Terrace avenue, got off the truck, picked up milk bottles (presumably in a case) for delivery, went with them down hill one or more short blocks, made the delivery, picked up eight "empties" in a case and four loose, and was ascending the hill to the truck, when he felt a pain in the left side. This was at four-forty-five A. M. Just when he began to make deliveries does not appear, but as he loaded

the truck at two A. M. it would seem that deliveries must have begun some considerable time before four-forty-five A. M. He testified that the hill was so steep that in going down he did a certain amount of sliding, but to judge from the testimony, this was customary under the conditions of that winter.

There is a class of cases in which the workman, though doing his usual work, contracts illness because of temporarily severe conditions essentially dangerous to health. The cases of sunstroke, and of pneumonia contracted because of temporary exposure to severe cold, are of this class, *e. g., Richter* v. *DuPont,* 118 *N. J. L.* 404; *Matthews* v. *Woodbridge,* 14 *N. J. Mis. R.* 143; 117 *N. J. L.* 146, and *George* v. *Waldron,* 111 *Id.* 4. There is another class of cases where conditions were not unusual, but the work required was exceptionally severe; as for example, *Bernstein Furniture Co.* v. *Kelly,* 115 *Id.* 500, and *Van Meter* v. *Morehouse,* 13 *N. J. Mis. R.* 558; and of course cases arise in which both work and conditions are exceptional; and in which some unusual strain reacts on an enfeebled and diseased physique. *Voorhees* v. *Smith Schoonmaker Co.,* 86 *N. J. L.* 500; *Graves* v. *Burns,* 10 *N. J. Mis. R.* 667; 110 *N. J. L.* 607.; *Schneider* v. *Haerter,* 119 *Id.* 548. But the case in hand is in none of these classes. In homely phrase, if the evidence shows anything, it is simply a case of overwork; the sort of case that arises every day, among all classes, and in all kinds of work. Any hard worker may break down and develop a heart condition. The petitioner indeed may have had such a condition without being aware of it, though of this there is no evidence; but he did this severe work for years, and for the whole of a winter under conditions generally the same as those of March 4th. There was nothing unusual about the work, or about the conditions, or about what he was doing when and before he felt a pain in his side.

We conclude, on his own testimony, that no case of an accident arising out of and in the course of the employment was shown; and the judgment of the Pleas and award by the bureau are therefore set aside, with costs.