JOSEPH DIXON CRUCIBLE CO. AND OCEAN ACCIDENT AND GUARANTEE CORP., PROSECUTORS, v. JOHN LAW, DEFENDANT.

JOSEPH DIXON CRUCIBLE CO. AND OCEAN ACCIDENT AND GUARANTEE CORP., PROSECUTORS, v. CLARA LAW, INDIVIDUALLY, DEFENDANT.

Submitted January 21, 1947—Decided May 29, 1947.

Before Case, Chief Justice, and Justices Heiier and Colie.

For the prosecutors, *Charles J. Gormley* and *Wall, Haight, Carey & Hartpence.*

For the defendants, *Edwards, Smith & Dawson (Raymond Dawson* and *Allen C. Mathias).*

The opinion of the court was delivered by

Case, Chief Justice. Stripping the case of confusion that has arisen because of the subsequent death of the injured employee and of procedural steps relating thereto, the meritorious question for decision on this writ is whether the employee, John Law, suffered an accident on March 27th, 1944, which arose out of and in the course of his employment and resulted in his temporary disability for five months and a permanent disability total in character. Counsel for defendants herein state that as the question, and we believe it to be so.

On March 27th, 1944, Law became ill while at work, and on May 1st, 1944, he filed his petition with the Workmen's Compensation Bureau alleging that his incapacity resulted from an accident arising out of and in the course of his employment. The Deputy Commissioner found, after the hearing, that the petitioner had failed to establish his claim. On appeal, the Hudson County Common Pleas reversed. The employer and its insurer prosecute this writ of *certiorari* to review the judgment entered in the Pleas.

Law, seventy-nine years of age, was a tool worker in the employ of Joseph Dixon Crucible Co. At least as early as March, 1943—a year before the alleged accident—and, in the opinion of Law's physician, for ten or fifteen years before that, the petitioner suffered from arteriosclerosis, hypertension and chronic myocarditis. Those ailments tended to become progressively worse. On March 29th, 1944, two days after the alleged accident now counted upon, Dr. Duffy, the physician who had treated Law the year before and who was later a witness for him at the hearing, was summoned to his bed-

side. Dr. Duffy found the patient with weak and irregular heart sounds, low blood pressure, rales in chest, distended abdomen, diarrhea and bloody sputum. He diagnosed the ailment as a coronary occlusion. Dr. Kaufman, a heart specialist, who examined Law on the same day and who also was a witness for him at the hearing, made a diagnosis of "hypertensive arterior-sclerotic vascular disease, myocardiac degeneration, as a result of the coronary disease. Digitalis effect and cardiac deficiency." Answering a hypothetical question on the assumption that the factors were therein truthfully stated, Dr. Kaufman further testified that in his opinion the work Law did on the morning of March 27th, 1944, was responsible for the formation of the coronary occlusion which resulted in the heart failure and the condition in which Law was found on March 29th. But some of the important factors in that question rested solely upon Law's testimony, and it was the finding of the Deputy Commissioner—in which we concur—that "This petitioner is 79 years old and I am inclined to think that from brooding over his troubles he has fixed in his mind a series of events as he would have them occur rather than as they did take place. I think I can but reject the story as he has told it and accept that of the respondent's witnesses as truly reflecting the occurrences that actually took place on the day in question. * * * It is my conclusion that his disability stems rather from a natural progression of his disease. The onset of the same throughout that day seems to have been gradual and undramatic on the facts as I have accepted them to be."

Without detailing the voluminous evidence, we find that Law's labor on March 27th did not have the heavy manual exertion which he relates and that there was nothing which involved such unusual incident, or even such effort or strain, as to be denominated an accident. "An accident is 'an unlooked for mishap or untoward event which is not expected or designed,' * * * an event happening at a specific time or occasion. * * * To render an injury compensable there must be an event or happening, beyond the mere employment itself, which brings about the final result or contributes thereto, and without which the injury or death would not

have resulted." *Lohndorf* v. *Peper Bros. Paint Co.*, 134 *N. J. L.* 156; 46 *Atl. Rep.* (2d) 439; *affirmed,* 135 *N. J. L.* 352. Appraising the testimony of all of the witnesses, we conclude that the "very hard blows of the hammer" and like incidents which the hypothetical question contained are not founded in fact and that consequently the expert opinion, grounded in that false assumption of fact, falls. Law collapsed while at work and that, we think, is the most that can be said.

There is a presumption that any death from heart disease is the result of natural causes; the *onus* is on the claimant to establish that the asserted accident was at least a contributory cause without which the occlusion would not have occurred. *Lohndorf* v. *Peper Bros. Paint Co., supra.* It is requisite that in workmen's compensation cases grounding in alleged heart injuries the evidence be carefully scrutinized and assayed lest disability consequent upon disease alone constitute the basis of an award of compensation. *Schlegel* v. *H. Baron & Co.,* 130 *N. J. L.* 611.

The more convincing, and in our finding the true, explanation of Law's experiences on March 27th and succeeding days is that this old man, 79 years of age, a sufferer from arteriosclerosis, myocarditis and hypertention, gradually developed a heart failure which culminated in his physical collapse. Such, in effect, was the opinion of Dr. Jaffin expressed in part as follows:

My conclusions are that this was the case of a seventy-nine year old man suffering with hypertensive cardiovascular disease, but one attempting to carry on like a man fifteen to twenty years younger. Neither the history nor the electrocardiographic findings were such as to lead me to believe that he had suffered a coronary occlusion on March 27th, 1944. I am, rather, of the opinion that he gradually developed heart failure which culminated in the severe symptoms that occurred while he was being taken home. This is further supported by the statement of the family and his physician that on March 28th, 1944, the following day, he was very cyanotic and had bloody sputum. These symptoms and signs confirm my impression that he had congestive heart failure. I do not believe

that the effort of this work was any greater, or even as great, as that involved in his walking to the railroad station and certainly was much less than many of his other household activities. He is now apparently suffering from the natural ultimate failure of his cardiovascular disease. This would be inevitable regardless of whether he had a coronary occlusion on March 27th, 1944, or not."

The claimant did not satisfactorily carry the burden of proving the essentials of his case.

The judgment below will be reversed.

Mr. Justice Heher concurs in the result.