EDWARD L. NEYLON, PETITIONER-RESPONDENT, v.
FORD MOTOR COMPANY, RESPONDENT-APPELLANT.

Argued January 21, 1952—Decided February 11, 1952.

*Mr. Sam Weiss* argued the cause for respondent (*Mr. Lewis S. Jacobson*, attorney).

*Mr. Verling C. Enteman* argued the cause for appellant (*Mr. Stuart A. Young, Jr.*, on the brief; *Messrs. McCarter, English and Studer*, attorneys).

The opinion of the court was delivered by
·CASE, J.   The question is whether, in this compensation case, there is evidence to support a finding that the workman sustained an accident arising out of and in the course of his employment.   He was employed by respondent as a utility man or car loader.   In the course of his regular duties, at about noon, he was unloading car seat frames, each weighing about 10 or 15 pounds, from a freight car.   He was standing on a pile of frames in the car and was pulling the frames off· one at a time and handing them down, in like order, to a fellow worker who was on the floor of the car.   As he pulled a frame from the pile he felt a pain in his back.   He was doing the same type of work he had been doing for six or seven months prior thereto, and in the same way.   The only unusual incident on this occasion was that he experienced the pain. Immediately following the occurrence he went to the first aid dispensary and said, "I don't see how I could have hurt my back because these frames are not heavy"; and at the hearing on his petition for compensation he testified:

"Q. The only thing unusual about this one was that you got a pain in your back as you pulled it?   A. That is right, yes.
Q. As far as the operation itself, pulling it, or whatever you were doing, it was nothing different from what you had done for a

long while, you had done it for many months?   A. Ever since I went there."

Claim was filed for a sacroiliac sprain, and compensation was allowed.  On successive appeals the Middlesex County Court, Law Division, and the Superior Court, Appellate Division, affirmed.  The case comes before us on our certification, granted on the workman's petition.

██ From the inception of the workmen's compensation statute, by the wording of the law and by the construction given by our courts, liability for injury was grounded in *accident*.  The classic definition of the essential incidents to recovery were:

"(a) an accident, (b) arising out of, and (c) in the course of, his (the workman's) employment.  Even though the injury arose out of and in the course of the employment, if it be not an 'accident,' within the purview of the act, there can be no recovery.  *   *   * an 'accident' is an unlooked-for mishap or untoward event which is not expected or designed."  *Bryant, Adm'x. v. Fissell*, 84 *N. J. L.* 72 (*Sup. Ct.* 1913).

The *criteria* of an accident have varied, but it has remained of the essence that there should be an accident.

██ The workman's contention is, in substance, that except in heart cases an injury imputes accident.  The contention reduces to an exception a requirement which the statute makes general.  The language of the statute is: "Compensation for personal injuries  *   *   *  by accident arising out of and in the course of  *   *   *  employment."  *N. J. S. A.* 34:15-7. The suggested construction would, obviously, strike out the effect of the words "by accident," whereas it is a cardinal rule of statutory construction that statutes are to be so construed that, if possible, full force and effect shall be given to every sentence, clause and word thereof.  *Bogert v. Hackensack Water Co.*, 101 *N. J. L.* 518 (*E. & A.* 1925).

The incident of an unusual strain producing injury or death either directly or by being superimposed upon an ailing bodily condition has from the early days of the statute been

recognized as an accident in the statutory sense. This is true not only of heart cases but of cases involving other bodily organs and parts, as: pressure on parts weakened by cancer, *Voorhees v. Smith Schoonmaker Co.*, 86 *N. J. L.* 500 (*Sup. Ct.* 1914); affecting a weakened heart, *Winter v. Atkinson-Frizelle Co.*, 88 *N. J. L.* 401 (*E. & A.* 1915); aggravating a duodenal ulcer, *Holzwarth v. Hedden, &c., Co.*, 1 *N. J. Misc.* 381 (*Essex Com. Pleas* 1923, not officially reported); an extraordinary strain activating tuberculosis, *Graves v. Burns, Lane & Richardson*, 10 *N. J. Misc.* 667 (*Sup. Ct.* 1932, not officially reported), affirmed on the opinion below, 110 *N. J. L.* 607 (*E. & A.* 1933); a severe or twisting sprain aggravating a spinal condition, *George T. Newell, Jr., Inc., v. Workmen's Compensation Bureau*, 10 *N. J. Misc.* 405 (*Sup. Ct.* 1932, not officially reported), affirmed on the opinion below, 110 *N. J. L.* 25 (*E. & A.* 1933); unusual physical exertion dilating the heart, *Fire Commissioners, &c., v. Morris*, 12 *N. J. Misc.* 153 (*Sup. Ct.* 1934, not officially reported); prolonged exertion in pulling out great weeds and bushes, lighting up an old arthritic condition, *Van Meter v. E. R. Morehouse, Inc.*, 13 *N. J. Misc.* 558 (*Sup. Ct.* 1935, not officially reported); a sprain "because of some unusual effort" aggravating a prior sprain, *Marotta v. Fabi*, 13 *N. J. Misc.* 690 (*Sup. Ct.* 1935, not officially reported); "work of an unusual character" and from it "an unusual exertion" aggravating a heart condition and so causing death, *Bernstein Furniture Co. v. Kelly*, 114 *N. J. L.* 500 (*Sup. Ct.* 1935), affirmed 115 *N. J. L.* 500 (*E. & A.* 1935); "if extraordinary strain * * * was the causative agent of the strangulation (hernia) the fatality was the consequence of an accidental injury," *Furferi v. Pennsylvania Railroad Co.*, 117 *N. J. L.* 508 (*E. & A.* 1937); lifting "a heavy weight," causing tubercular hemorrhage, held, following *Bernstein v. Kelly, supra*, an accident, *Rekoon v. General Lead Batteries Co.*, 119 *N. J. L.* 296 (*Sup. Ct.* 1938); "unusual exertion" imposed on pre-existing heart condition, causing death, *Schneider v. F. & C. Haerter*, 119 *N. J. L.* 548 (*Sup. Ct.*

1938); "unusual effort" aggravating pre-existing heart condition, causing death, *Rother v. Merchants Refrigerating Co.,* 122 *N. J. L.* 347 (*Sup. Ct.* 1939). Our cases for nearly 30 years based recovery upon the extraordinary causation. The requirement was implicit.

In *Hentz v. Janssen Dairy Corporation,* 121 *N. J. L.* 160 (1938), the Supreme Court held, factually, that the employee was the driver of a milk truck making retail deliveries at the houses of customers, that his regular duties were exacting and laborious and that although the road was icy and the slope of it steep there was nothing unusual about the work or about the conditions on the day when he was stricken with coronary thrombosis. Consistently with what we conceive to have been the holdings of our cases, the court decided that on those facts the happening was not an accident within the application of the Workmen's Compensation Act. On appeal the Court of Errors and Appeals, 122 *N. J. L.* 494 (1939), determined that the employment from which the strain resulted was "unusually hard on [that] day," expressed inability to distinguish the case from *Voorhees v. Smith Schoonmaker Co., Graves v. Burns,* and other cases cited *supra,* and reversed. Taking the facts as resolved by the Court of Errors and Appeals, namely, that the conditions on the occasion of the heart attack were unusual, there was no distinction to be made from the earlier decisions and the reversal was consistent with them. On that basis there was no occasion for a new pronouncement of law; but the opinion, in making the point, not relevant in the instant case, that if there be an accident the superimposing of that accident upon a weakened organ does not defeat recovery, incorporated the following quotation from Lord Loreburn's statement in *Clover, Clayton & Co. v. Hughes,* 3 *B. W. C. C.* 284:

"I do not think we should attach any importance to the fact that there was no strain or exertion out of the ordinary. * * * An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health."

That statement did not go to the question of what constitutes an unusual effort or an unusual condition and it did not bear upon the effect of an occupational accident upon a body impaired by disease, the matters with which the *Hentz* opinion was concerned. We discover no original expression in the *Hentz* opinion incorporating Lord Loreburn's view, but if the trend of the opinion is to be considered as supporting the doctrine then the opinion, to that extent, is *dictum*.

Concurrently with the handing down of the *Hentz* opinion, the Court of Errors and Appeals also decided the case of *Bollinger v. Wagaraw Building Supply Co.*, 122 *N. J. L.* 512 (1939), wherein it said that

"We think that the requirement that the injury or death arise by accident, under our statute, is satisfied if the claimant discharges the burden of proving that the condition complained of, *i. e.*, the injury or death, is related to or affected by the employment, that is to say, if but for the employment it would not have occurred."

Although the opinion propounded that view, it clearly held that an injury had occurred at a fixed time, that there was "an unexpected occurrence," consisting of "the impinging of the sand" on a mole on the workman's foot, "resulting in injury" on the named day, that the impinging of the sand on the mole was the producing cause of cancer, that the irritation so started caused the melanomic change. Thus the opinion marshalled its facts to constitute an unlooked-for mishap or untoward event not expected or designed—an accident within the definition of *Bryant v. Fissell, supra*. We consider that the quoted paragraph was unnecessary to the decision. Nevertheless it became a lever upon which broad statements were rested by the Court of Errors and Appeals in *Ciocca v. National Sugar Refining Co.*, 124 *N. J. L.* 329, 334 (1939), and upon which turned the decision by the Supreme Court in *Molnar v. American Smelting and Refining Co.*, 127 *N. J. L.* 118, 120, although the Court of Errors and Appeals in affirming the latter case, 128 *N. J. L.* 11 (1941), was careful to note that "there was an extra heavy strain

placed upon the man in the work he was doing shortly before he collapsed"; and out of these inter-related decisions came *Cavanaugh v. Murphy Varnish Co.,* 130 *N. J. L.* 107 (*Sup. Ct.* 1943), affirmed on the opinion below, 131 *N. J. L.* 163 (*E. & A.* 1944). It did not, however, pass unnoticed that their diversion from the established law had arisen from what was said *obiter* by the Court of Errors and Appeals in the *Bollinger* case (see *Di Maria v. Curtiss-Wright Corp.,* 134 *N. J. L.* 524 (*Sup. Ct.* 1946), affirmed on the opinion below, 135 *N. J. L.* 470 (*E. & A.* 1947)), and in the *Hentz* and *Molnar* cases (see *Lohndorf v. Peper Bros. Paint Co., infra,* at *p.* 161).

The focal question in the *Ciocca* case varied from the one presented in physical exertion injury cases in that it arose from a heat prostration and was whether or not a greater exposure was needed than that to which persons generally in the particular locality were exposed. The statutory construction theretofore established by *Kauffeld v. G. F. Pfund & Sons,* 97 *N. J. L.* 335 (*E. & A.* 1922), and restated in *Richter v. Du Pont,* 118 *N. J. L.* 404 (*Sup. Ct.* 1937), affirmed on the opinion below, 119 *N. J. L.* 427 (*E. & A.* 1938), had been that when the employment brings a greater exposure than that to which persons generally in that locality are exposed, injury or death resulting therefrom arises out of the employment, the "unusualness" (*cf. Larke v. John Hancock Mut. Life Ins. Co.,* 97 *A.* 320 (*Conn. Sup. Ct. of Errors* 1916), upon which the *Kauffeld* decision was rested) being there predicated upon the comparative exposure of the employee and of persons generally in the locality. The *Ciocca* decision, following the lead of the *Hentz* and the *Bollinger* cases, held that the requirement as to an accident is satisfied if it is shown that but for the employment the injury would not have occurred. Our determination in the instant case is primarily concerned with physical exertion injuries and we presently address ourselves thereto. The *Ciocca* opinion undertook to state a general principle which in its generality we find to be unsound, but we refrain from

passing upon the correctness or incorrectness of the specific application to cases arising from exposure to the elements.

It is not to be denied that for some years following the *Hentz* and *Bollinger* decisions there was confusion as to the significance of the words "by accident." But the doubts were dissipated by the clear and pertinent language in *Lohndorf v. Peper Bros. Paint Co.,* 134 *N. J. L.* 156 (*Sup. Ct.* 1946), affirmed on the opinion below, 135 *N. J. L.* 352 (*E. & A.* 1946). It was there held that:

> "An accident is 'an unlooked for mishap or untoward event which is not expected or designed.' *Geltman v. Reliable Linen and Supply Co.,* 128 *N. J. L.* 443; 'an unintended or unexpected occurrence,' *Bollinger v. Wagaraw Building and Supply Co.,* 122 *Id.* 512; it is an event happening at a specific time or occasion. *Liondale Bleach Works v. Riker,* 85 *Id.* 426. The words 'accident' and 'employment' are not synonymous. To render an injury compensable there must be an event or happening, beyond the mere employment itself, which brings about the final result or contributes thereto, and without which the injury or death would not have resulted. Because an individual continues his occupation when rest is indicated or work *contra*-indicated and because by continuing the employment he becomes sick or disabled does not of itself form a basis for compensation. To hold otherwise is to constitute an employer an insurer of the health and life of his employees."

It was thus said with distinctness that there must be an accident, that the accident must be an event beyond the mere employment and that the injury is the result of the accident and is not itself the accident. Although the matter sued upon was death from a coronary occlusion, the principle stated had to do generally with compensable injuries, the need for and the definition of an accident, and the negation of the contention that an injury arising out of and in the course of the employment, with nothing more, was compensable. *Mills v. Monte Christi Corp.,* 10 *N. J. Super.* 162 (*App. Div.* 1950), certif. denied 6 *N. J.* 315 (1951), and *Fox v. Plainfield,* 10 *N. J. Super.* 464 (*App. Div.* 1950), are cited by respondent as *contra*. To the extent that these decisions are in opposition to the stated principle, they are overruled.

The language of the *Lohndorf* opinion was approved, and in part quoted, by us in *Seiken v. Todd Dry Dock, Inc.*, 2 *N. J.* 469 (1949). Among the numerous decisions following the *Lohndorf* decision and consistent therewith in requiring unusual efforts or conditions to justify the finding of an accident under the statute are: *Joseph Dixon Crucible Co. v. Law,* 135 *N. J. L.* 528 (*Sup. Ct.* 1947); *Lagerveld v. Nathan Doblin Corp.,* 137 *N. J. L.* 335 (*Sup. Ct.* 1948); *Ames v. Sheffield Farms Co., Inc.,* 137 *N. J. L.* 336 (*Sup. Ct.* 1948), affirmed 1 *N. J.* 11 (1948); *Moleski v. Bohen,* 1 *N. J. Super.* 136 (*App. Div.* 1948); *Gaudette v. Miller,* 1 *N. J. Super.* 145 (*App. Div.* 1948); *Temple v. Storch Trucking Co.,* 2 *N. J. Super.* 146 (*App. Div.* 1949), affirmed 3 *N. J.* 42 (1949); *Irons v. New Jersey Department of Institutions & Agencies,* 3 *N. J. Super.* 216 (*App. Div.* 1949); *Carpenter v. Calco Chemical Div., Amer. Cyanamid Co.,* 4 *N. J. Super.* 53 (*App. Div.* 1949); *Bilyou v. George M. Brewster & Son, Inc.,* 4 *N. J. Super.* 59 (*App. Div.* 1949). These, including *Seiken v. Todd Dry Dock, Inc.,* were heart cases, but we do not distinguish in this respect between heart cases and other cases involving physical exertion injuries.

We conclude that it was necessary for the claimant to prove an unusual strain or an unusual exertion or some condition unusual in the employment in order to show an accident within the meaning of the Workmen's Compensation law. He did not so prove. The question posed at the beginning of the opinion is answered in the negative.

The judgment below will be reversed. No costs.

HEHER, J. (dissenting). It is conceded that the workman sustained a traumatic sacroiliac sprain arising out of and in the course of his employment. The contention is that this did not constitute an injury by accident within the intendment of section 7 of the Workmen's Compensation Act of 1911 (*R. S.* 34:15–7), providing compensation for a workman's personal injuries or death suffered "by accident arising out of and in the course of" his employment. The specific

insistence is that "when * * * an injury has been caused by physical exertion alone, New Jersey law now requires, and, save for a very few cases decided during a brief interval of time, always has required as the minimal 'accident' the existence of an unusual exertion or unusual strain." The rationale of the opinion of my brethren of the majority is that to bring a given case within the statute, "there must be an accident, that the accident must be an event beyond the mere employment and that the injury is the result of the accident and is not itself the accident," and it is incumbent on the claimant to prove "an unusual strain or an unusual exertion or some condition unusual in the employment in order to show an accident" within the purview of the statute. I dissent from this judgment as an undue constriction of a measure designed to render compensation for the consequences of disabling and fatal industrial accidents and to place the burden upon industry, and therefore a remedial provision grounded in social and economic considerations that on well settled principles is to be liberally and broadly construed to effectuate the beneficent object in view. *Vide Sigley v. Marathon Razor Blade Co., Inc.*, 111 *N. J. L.* 25 (*E. & A.* 1933).

This is to reiterate the view voiced in my concurrences in the judgments pronounced in *Lohndorf v. Peper Bros. Paint Co.*, 135 *N. J. L.* 352 (*E. & A.* 1947) and *Temple v. Storch Trucking Co.*, 3 *N. J.* 42 (1949) that this doctrine has introduced into judicial administration an arbitrary classification that is not to be found in the statute. An event or happening "beyond" the employment would hardly be an incident of the service. Certainly, an accident does not arise out of the employment in statutory intendment unless the risk is reasonably incident to the employment. The legislative design plainly was to make provision for the hazard of accident within the range of the servant's work. A compensable risk may be either an ordinary one, directly connected with the employment, or one extraordinary in character, indirectly connected with the employment because of its special nature; but unless the hazard be either the one or the

other, the accident is not attributable to the employment. In either event, the happening is imputable to the employment as one within the service and not beyond it, and therefore compensable. The critical inquiry is whether the danger is one to which the employee was exposed because of the nature of his employment: if it is, the accident is within the statutory class; otherwise not. *Geltman v. Reliable Linen & Supply Co.*, 128 *N. J. L.* 443 (*E. & A.* 1943).

In seeking for the legislative intent, we should take care not to enter the realm of the abstruse and the metaphysical. The lawgivers have used the word "accident" in its popular and ordinary sense. The term has a wide signification. Its long accepted definition in New Jersey, as elsewhere, is "an unlooked-for mishap or untoward event which is not expected or designed." *Bryant, adm'x., v. Fissell*, 84 *N. J. L.* 72 (*Sup. Ct.* 1913). The English Compensation Act of 1906 (6 *Edw. VII*, 1906, *c.* 58, *sec.* 1 (1)) is the prototype of ours: and, barring a definite contextual expression *contra*, the interpretation given this common basic provision by the courts of England before the adoption of the measure in New Jersey may well be considered as determinative of the legislative purpose. It is a fair presumption that the Legislature, in thus adopting the very language of the foreign statute, had in mind the construction given in that jurisdiction to the words so employed, and to have used them in that sense. *Hall v. Doremus*, 114 *N. J. L.* 47, 53 (*Sup. Ct.* 1934); *Geltman v. Reliable Linen & Supply Co.*, cited *supra*.

The definition of the word "accident" accepted in the cited case of *Bryant, adm'x., v. Fissell*, is Lord Macnaghten's in *Fenton v. Thorley & Co., Ltd.* (1903), *A. C.* 443, construing a like provision of the earlier English act of 1897. 60, 61 *Vict.* (1897), *c.* 37, *sec.* 1 (1). There, it was held that a rupture incurred in the doing of a normal act of the employment constituted an injury by accident within the meaning of the statute. And in *Clover, Clayton & Co., Ltd., v. Hughes* (1910), *A. C.* 242, 79 *L. J. K. B.* 470, a fatal rupture of an advanced aneurism of the aorta, caused by strain when the

workman was tightening a nut with a spanner, was held by the House of Lords to be an "accident" within the sense of the statute, even though the aneurism was in such an advanced condition that "it might have burst while the man was asleep, and very slight exertion, or strain, would have been sufficient to bring about a rupture." The finding of the county court judge was that "the death was caused by a strain arising out of the ordinary work of the deceased operating upon a condition of body which was such as to render the strain fatal." Lord Loreburn said that the rupture was certainly an "accident" in the statutory sense, for it was an "untoward event" that was not expected or designed, and that, while the fatal strain was "quite ordinary in this quite ordinary work," it was nevertheless a compensable accident, for there was the requisite "relation of cause and effect between the employment and the accident, as well as between the accident and the injury." He declared that there is the essential causal connection if "it appears that the employment is one of the contributing causes without which the accident which actually happened would not have happened, and if the accident is one of the contributing causes without which the injury which actually followed would not have followed." An accident, he continued, may be "something going wrong within the human frame itself, such as the straining of a muscle or the breaking of a blood vessel." He deemed it of no importance that "there was no strain or exertion out of the ordinary." An accident, he said, "arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health." He found the test to be whether the work, "as a matter of substance, contributed to the accident." The inquiry is: Did the workman "die from the disease alone or from the disease and employment taken together, looking at it broadly? Looking at it broadly, I say, and free from over-nice conjectures, was it the disease that did it, or did the work he was doing help in any material degree?" Lord Macnaghten, concurring said:

"The fact that the man's condition predisposed him to such an accident seems to be immaterial. The work was ordinary work, but it was too heavy for him."

The principle was again applied by the House of Lords in *Parlridge Jones and John Paton, Ltd., v. James* (1933), *A. C.* 501, where there was a fatal attack of angina pectoris; also by the Court of Appeal in *McArdle v. Swansen Harbour Trust,* 113 *L. T.* 677; 8 *B. W. C. C.* 489 (1915), another case of a ruptured aneurism by reason of a strain at ordinary work; and in *Stewart v. Wilsons and Clyde Coal Co., Ltd.,* 5 *Frazer* 120 (1900), where Lord M'Laren laid down the criterion as follows: "If a workman in the reasonable performance of his duties sustains a physiological injury as the result of the work he is engaged in  \*  \*  \*  this is accidental injury in the sense of the statute."

And in *Trim Joint District School v. Kelly* (1914), *A. C.* 667, where an assistant master of a training school for children suffered a fatal skull fracture at the hands of boys under his care who had entered into a conspiracy to assault him in retaliation for unwelcome discipline, the House of Lords held that the occurrence was an accident within the meaning of the statute. Viscount Haldane, L. C., read the word "designed" in Lord Macnaghten's definition as referring to "designed by the sufferer." He continued: "If the object of this statute be as wide as I gather from the study of its language, its construction must, as it appears to me, be that accident includes any injury which is not expected or designed by the workman himself.  \*  \*  \*  To take a different view appears to me to amount, in the language of Mathew, L. J., in *Challis v. L. and S. W. R. Co.* (1905), 2 *K. B.* 154; 7 *W. C. C.* 23, to the reading into the act of a proviso that an accident is not to be deemed within it if it arises from the mischievous act of a person not in the service of the employer." If, he said, the workman is the victim of "unexpected misfortune," the consequent injury is compensable, subject to the all-important limitation that the "risk should have arisen out of and in the course of the employment." Lord Loreburn,

concurring in the judgment, affirmed that the term "accident" is to be construed "in the popular sense, as plain people would understand it," but also "in its setting, in the context, and in the light of the purpose which appears from the act itself." After pointing to the variety of meanings in ordinary usage, he declared: "In short, the common meaning of this word is ruled neither by logic nor by etymology, but by custom, and no formula will precisely express its usage for all cases." Rejecting the theory that the employee there "could not have been killed by accident because he was struck by design," he said that "if you looked at the nature of the man's employment; you might say he was injured by what was accident in that employment. * * *. I find that to treat the word 'accident' as though the act meant to contrast it with design would exclude from what I am sure was an intended benefit, numbers of cases which are to my mind obviously within the mischief. That makes me realize the value of the old rule about construing a remedial statute."

The injury here was, I submit, within the mischief to which the remedy was directed. The legislative purpose was to provide for the hazard of accident within the scope of the employee's work. The question is whether there was an accident, in the sense of an unlooked-for mishap or untoward event not expected or designed, imputable to a risk reasonably incident to the doing of the master's work. The words "out of" import an accident that is in some sense due to the employment—an accident resulting from a risk attending the employment. Chief Judge Loughran, for the New York Court of Appeals, lately said: "Whether a particular event was an industrial accident is to be determined, not by any legal definition, but by the common-sense viewpoint of the average man." *Masse v. James H. Robinson Co.*, 301 *N. Y.* 34, 92 *N. E.* 2d 56 (*Ct. of App.* 1950). How would the lay mind describe the occurrence here, if not as an accident, *i. e.*, a sprain of the sacroiliac joint as the result of exertion in the doing of laborious work? Would the person so afflicted consider himself the victim of disease or an acci-

dent? How would the medical fraternity characterize it except as an accident? There was here an injury traumatic rather than specific in nature, followed immediately by the pain and disability which usually attend such traumata. The indirect application of force produced internal pressure and consequent injury to the sacroiliac ligaments. Compare *Furferi v. Pennsylvania R. R. Co.*, 117 *N. J. L.* 508 (*E. & A.* 1937). A sprain is (1) a sudden or violent overstrain or wrenching, as of the ligaments of a joint; (2) the condition caused by such overstrain, usually including swelling and inflammation. *Webster's New International Dictionary* (2d ed.).

As pointed out by Lord Loreburn in the cited case of *Clover, Clayton & Co., Ltd., v. Hughes*, a distinction between "usual" and "unusual" strains and exertions in classifying compensable and noncompensable hazards of employment would be illusory, for it necessarily presupposes a standard of exertion varying in every trade and occupation. It is an impracticable rule plainly at odds with the statutory concept of an accident bearing a causal relation to the employment. Repeating the query put in the cited case of *Temple v. Storch Trucking Co.*, Does the rule have reference to an occurrence that is not incidental to the employment, and therefore beyond it? Or does it relate to strain or exertion that is incidental to the employment, but not usual in the doing of the work? If so, how would the degree of exertion be measured? And why should there be a distinction between usual and unusual strains if they are alike incidental to the employment? Is it not in either case a happening arising out of the employment? If the statutory category includes disabling injury resulting from the direct application of force in the performance of an ordinary service incident to the employment, such, for example, as the loss of a member, on what principle do we exclude an injury ensuing from the pressure of intervening indirect force? In either case, there is an injury traumatic in origin. What difference can there

be in this regard between ordinary and extraordinary strain? Great exertion may on occasion be required in the performance of duty incident to the employment—e. g., in the discharge of fire and police duties. And yet the happening is not beyond the service, but rather the result of effort in the normal pursuit of the employment, not unusual or extraordinary when the standard and demands of duty are considered. A rule that differentiates in this regard the usual from the unusual strain is an artificial and unworkable deviation from the interpretation accorded this basic provision of the statute from its early days—an interpretation in keeping with that given the same clause of its English prototype.

Injury to the internal bodily structure as the result of exertion in the performance of the master's work, or by the conditions of the employment, without any external happening of an accidental nature, is generally deemed accidental within the statutory view, whether the exertion or the circumstances be usual or unusual. The statutory criterion of an accident is met where either the cause or the result is unexpected. *Masse v. James H. Robinson Co.*, cited *supra; Baltimore & O. R. Co. v. Zapf,* 192 *Md.* 403, 64 *A.* 2d 139 (*Ct. of App.* 1949); *Safeway Stores, Inc., v. Gilbert,* 68 *Ariz.* 202, 203 *Pac.* 2d 870 (*Sup. Ct.* 1949); *Gray's Hatchery & Poultry Farms, Inc., v. Stevens,* —— *Del.* ——, 81 *A.* 2d 322 (*Super. Ct.* 1950). Any "untoward and unexpected event is an accident. * * * That is, 'accident' is used in its popular sense." *Boody v. K. & C. Mfg. Co.,* 77 *N. H.* 208, 90 *A.* 859 (*Sup. Ct.* 1914). See, also, 58 *Am. Jur., p.* 756, and the cases there cited, and 27 *North Carolina Law Review, pp.* 509, 602.

The fear of malingering and the false claim should not serve to deny the principle. As in other cases, unless the claimant meets the burden of proof, he cannot recover. There can be no doubt that the plaintiff here has sustained the burden.

Mr. Chief Justice VANDERBILT joins in this opinion.

*For reversal*—Justices CASE, OLIPHANT, WACHENFELD and BURLING—4.

*For affirmance*—Chief Justice VANDERBILT and Justice HEHER—2.