MARY LOHNDORF, APPELLANT, v. PEPER BROS. PAINT CO., RESPONDENT.

Argued October 18, 1946—Decided March 20, 1947.

For the appellant, *Ward & Levinthal.*

For the respondent, *Cox & Walburg* and *Arthur F. Mead.*

PER CURIAM.

The judgment under review herein is affirmed, for the reasons expressed in the opinion delivered by Mr. Justice Oliphant in the Supreme Court.

HEHER, J. (Concurring.) · I concur in the result but not in the reasoning of the opinion of the Supreme Court.

The question is whether there was error in matter of law in the determination of the Supreme Court that appellant had not sustained the burden of proving that her deceased husband died in consequence of an injury by accident which arose out of and in the course of his employment with the respondent company, within the intendment of *R. S.* 34:15–7. The cause of death was an occlusion of the coronary artery; and it is conceded that there was pre-existing coronary sclerosis. It is (and was) the contention of appellant that the fatal heart attack was the direct result of physical strain and exertion attending the performance of the deceased's labors as a salesman in the small retail paint store of respondent, of which he was also the manager.

In resolving the issue against appellant, the Supreme Court suggests that, if the heart failure was the consequence merely of exertion normally incident to the doing of the master's work, wholly devoid of unusual or extraordinary strain, the fatality is not attributable to an accident in the statutory view. It is said that, to render "an injury compensable there must be an event or happening, beyond the mere employment itself, which brings about the final result or contributes thereto, and without which the injury or death would not have resulted;" and the cases of *Hentz* v. *Janssen Dairy Corp.*, 122 *N. J. L.* 494, and *Molnar* v. *American Smelting & Refining Co.*, 128 *Id.* 11, were not deemed controlling because in each of those cases the heart strain ensued from "unusually hard labor on the day in question," and the workman "collapsed shortly after his severe efforts."

To sustain an award of compensation under the cited statute, it is requisite that there be an accident causally related to the employment. As stated in the opinion of the Supreme Court, an "accident," in the statutory intendment, is "an

unlooked for mishap" or "untoward event" which is "not expected or designed;" and such is the case where a heart ravaged by disease succumbs to strain or exertion arising from the doing of the master's work, even though it be but a normal incident of the service, in no sense extraordinary, and such as a sound heart could withstand. It is fundamental in the statute that, if strain or exertion attending the rendition of the service aggravates or accelerates the progress of a pre-existing physical infirmity or condition due to either trauma or disease, and disability or death ensues therefrom, there is a compensable accident and injury. Such is an untoward event, unintended and unexpected within the concept of the statute. The inquiry is whether the disabling injury or death is causally related to strain or exertion arising from the doing of the master's work. Did the accident come from the disease alone, or did the employment contribute to it? In the cited case of *Molnar* v. *American Smelting & Refining Co.,* the Supreme Court, in an opinion by Chief Justice Case (127 *N. J. L.* 118), laid it down that injury ensuing from ordinary or usual exertion attending the doing of the servant's usual work is compensable; and we do not understand that this court, on the affirmance, intended to modify the holding in this regard, for it was said by Mr. Justice Bodine (128 *Id.* 11) that the "degree of exertion is of no consequence, so long as the performance of the required work caused a strain upon the heart." *Vide Cavanaugh* v. *Murphy Varnish Co.,* 130 *Id.* 107. This principle was also given recognition in *Ciocca* v. *National Sugar Refining Co.,* 124 *Id.* 329.

This is the construction given the like clause of the English prototype of our statute. In the leading case of *Clover, Clayton & Co., Ltd.,* v. *Hughes,* (1910) *A. C.* 242; 79 *L. J. K. B.* 470, a fatal rupture of an advanced aneurism of the aorta, caused by strain when the workman was tightening a nut with a spanner, was held to be an "accident" within the meaning of the statute, even though the aneurism was in such an advanced condition that "it might have burst while the man was asleep, and very slight exertion, or strain, would have been sufficient to bring about a rupture." The finding of the county court judge was that "the death was caused by a strain

arising out of the ordinary work of the deceased operating upon a condition of body which was such as to render the strain fatal." Lord Loreburn, for the House of Lords, said that, while the fatal strain was "quite ordinary in this quite ordinary work," it was nevertheless a compensable accident, for there was the requisite "relation of cause and effect between the employment and the accident, as well as between the accident and the injury." He declared that there is the essential causal connection if "it appears that the employment is one of the contributing causes without which the accident which actually happened would not have happened, and if the accident is one of the contributing causes without which the injury which actually followed would not have followed." And he found that the rupture was certainly an "accident" in the statutory sense, for it was an "untoward event" that was not expected or designed. An accident may be "something going wrong within the human frame itself, such as the straining of a muscle or the breaking of a blood vessel." The term is to be taken in its ordinary and popular sense. In considering whether it was an accident which arose out of the workman's employment, he deemed it of no importance that "there was no strain or exertion out of the ordinary." An accident, he said, "arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health." He found the test to be whether the work, "as a matter of substance, contributed to the accident." He continued: Did the workman "die from the disease alone or from the disease and employment taken together, looking at it broadly? Looking at it broadly, I say, and free from over-nice conjectures, was it the disease that did it, or did the work he was doing help in any material degree?" Lord Macnaghten, concurring, said: "The fact that the man's condition predisposed him to such an accident seems to me to be immaterial. The work was ordinary work, but it was too heavy for him." As pointed out by Lord Loreburn, a distinction in this regard between usual and unusual strains and exertions would be illusory, for the application of such a rule would require a standard of exertion, varying in every trade and occupation.

The doctrine of this case was followed by the House of Lords in *Partridge Jones and John Paton, Ltd., v. James,* (1933) *A. C.* 501, where a fatal attack of angina pectoris, due to the failure of diseased coronary arteries to supply the amount of blood necessary for the heart to function when the workman "was doing his ordinary work in the ordinary way," was held to be a compensable accident. Lord Buckmaster said in this regard that, since it was found that "the result of the work was the failure of the blood supply resulting in angina pectoris, and that it was because he was engaged in doing his ordinary work in this diseased condition that this failure arose, and that the work and the disease together contributed to the death," there was an accident which arose out of the employment. He read the case of *Clover, Clayton & Co., Ltd.,* v. *Hughes, supra,* as rejecting the theory that it is necessary to show that the workman "has suffered an injury as the result of some definite thing that he did in the course of his work," and that, even though the work contributed to the death of a workman who, in the normal course of his work, owing to the imperfect condition of his arteries or whatever other internal organ may have been diseased, breaks down and dies, the case is not within the statute unless one can point to "a specific injury resulting from a specific act." And in *McArdle* v. *Swansen Harbour Trust,* 113 *L. T.* 677; 8 *B. W. C. C.* 489, another case of death due to a ruptured aneurism, Lord Cozens-Hardy for the Court of Appeal declared that the county court judge had misdirected himself as to the law in considering the test to be whether the workman, at the time of the rupture, was or was not doing work of a light nature. He said that if the rupture occurred by reason of the strain at work, however slight the strain might have been, there was an accident in the statutory sense. See, also, *Fenton Thorley,* (1903) *A. C.* 443. In *Stewart* v. *Wilsons and Clyde Coal Co., Ltd.,* 5 *F.* 120, Lord M'Laren laid down the criterion as follows: "If a workman in the reasonable performance of his duties sustains a physiological injury as the result of the work he is engaged in * * * this is accidental injury in the sense of the statute." See, also, *Whittle, Ebbw Vale Steel, Iron and Coal Co., Ltd.,* (1936)

*All E. R.* 1221; 29 *B. W. C. C.* 179; *Garofola* v. *Yale & Towne Manufacturing Co.,* 131 *Conn.* 572; 41 *Atl. Rep.* (2d) 451; *Harbor Marine Contracting Co.* v. *Lowe,* 152 *Fed. Rep.* (2d) 845; *Jones* v. *Town of Hamden,* 129 *Conn.* 532; 29 *Atl. Rep.* (2d) 772; *Giguere* v. *E. B. & A. C. Whiting Co.,* 107 *Vt.* 151; 177 *Atl. Rep.* 313; 98 *A. L. R.* 196; *Brown* v. *Nelson Co.,* 123 *Me.* 424; 123 *Atl. Rep.* 421; 60 *A. L. R.* 1293.

The judgment in the case of *Clover, Clayton & Co., Ltd.,* v. *Hughes, supra,* antedates the adoption of our statute; and it is reasonably to be presumed that our lawmaking body had in mind the construction theretofore given the like clause of the English act by the judicial tribunal of last resort of that jurisdiction, and to have used the words in the same sense. *Bollinger* v. *Wagaraw Building Supply Co.,* 122 *N. J. L.* 512; *Hall* v. *Doremus,* 114 *Id.* 47. Moreover, the statute is remedial in nature, and is therefore to be liberally and broadly construed. *Sigley* v. *Marathon Razor Blade Co., Inc.,* 111 *Id.* 25.

But, in my view, the proofs do not render reasonably probable the hypothesis of a causal connection between the work done by the deceased in the pursuit of his master's business and the fatal heart attack. The existence of that relationship is not brought within the bounds of reasonable inference. The question is whether strain or exertion attending the service accelerated the deceased's death. Would his death have occurred when it did if it had not been for the work in which he was engaged? For some time prior to the occlusion, the deceased had suffered from coronary artery insufficiency, due to advanced coronary artery sclerosis; and for several weeks, at least, before the mortal seizure, he had had intermittent attacks of what seemed to be angina pectoris, *i. e.,* a disease characterized by paroxysmal chest pains due to a temporary insufficiency of blood supply to the heart muscles. Most of these attacks came while the deceased was at rest; and the fatal occlusion occurred at three o'clock in the morning, long after he had retired. We do not find a satisfactory basis in the proofs for the conclusion that the anginal attacks were induced by strain or effort incident to the doing of the mas-

ter's work; and this is certainly so as to the mortal seizure. An analysis of the expert opinion adduced by the parties satisfies us that an inference of a causal relationship between strain attending the doing of the deceased's work and the onset of the coronary occlusion would be purely conjectural. Such a seizure may come from traumatic aggravation or acceleration of coronary artery disease, or it may climax the normal progress of the disease, uninfluenced by strain or exertion; and the evidence here is not sufficient in quality to repel the presumption that the fatal end was the consequence of disease alone. If it be conceded, *arguendo,* that the attacks of angina pectoris were induced in part by effort attending the doing of the deceased's work, there is no tangible basis in the evidence for the inference of a relationship between them and the coronary occlusion. A causal relationship is possible, but a bare possibility does not meet the legal standard of proof. Appellant has not discharged the *onus* of proof which the law has placed upon her.

In such circumstances, this court may determine the facts and direct the entry of judgment in conformity with the law as herein defined, and thus obviate a remand of the cause to the Supreme Court for that purpose. *Breheny* v. *County of Essex,* 134 *N. J. L.* 129.

Mr. Justice Donges, Mr. Justice Perskie, Mr. Justice Eastwood, Judge Dill and Judge McGeehan join in this opinion.

*For affirmance on opinion below*—THE CHIEF JUSTICE, BODINE, COLIE, WACHENFELD, WELLS, FREUND, McLEAN, JJ. 7.

*For affirmance on concurring opinion*—DONGES, HEHER, PERSKIE, EASTWOOD, DILL, McGEEHAN, JJ. 6.

*For reversal*—None.