JEAN TEMPLE, PLAINTIFF-APPELLANT, v. STORCH TRUCK-
ING COMPANY, DEFENDANT-RESPONDENT.

Argued September 26, 1949—Decided October 24, 1949.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

*Mr. R. Robinson Chance* argued the cause for appellant (*Mr. Robert C. Gruhin,* attorney).

*Mr. G. Dixon Speakman* argued the cause for defendant-respondent (*Messrs. Toner, Speakman & Crowley,* attorneys).

The opinion of the court was delivered by

CASE, J. [redacted] This is a workman's compensation case. The appeal comes to us from the Appellate Division of the Superior Court, whose opinion is reported in 2 *N. J. Super.*

146. The facts are recited there at length and need not be repeated. That court found factually that there was no event or happening in the decedent's work beyond the mere employment itself which brought about the final result, that there was no cardiac disturbance within a period sufficiently near the death to persuade the court, under the medical proofs, that the fatal myocardial infarction was attributable to any unusual strain or exertion of the employment, and that consequently the death did not result from an accident arising out of and in the course of the employment. There were proofs to sustain that factual finding. The appeal from the Workmen's Compensation Bureau to the Hudson County Court of Common Pleas was taken on September 4, 1947. The case, therefore, arose under the old constitution. The fact that there was a dissent in the Appellate Division from the decision of the court does not alter the fact that the court did determine the issue, and determined it by the judgment under appeal. This court will not weigh the evidence in this type of case arising under the old constitution, and where a question of fact was presented by the proofs below and determined, the judgment of that court is conclusive in this court and will not be reversed. *Grant v. Grant Casket Co.,* 2 *N. J.* 15.

Appellant, in her reply brief, for the first time in any of the proceedings, contends that the appeal from the Bureau to the Common Pleas Court was mistakenly taken, and this upon the alleged ground that the accident happened on the New York side of the Holland Tunnel and that, therefore, anything in the nature of a review should have been by writ of *certiorari* directed by the former Supreme Court to the Bureau and that consequently the Court of Common Pleas was without jurisdiction to receive the appeal; and, further, that inasmuch as the statute, *R. S.* 34:15-66 as amended by *P. L.* 1945, *c.* 74, *p.* 397, directed that the determination by the Court of Common Pleas should be made within ninety days after the filing of the transcript and the determination was not made within that ninety day period, the appeal was nullified and the jurisdiction in the Common Pleas was lost.

We pass by the untimeliness of that presentation and dispose of the questions on their merits.

██ ██ The controlling factor in determining whether the appeal did or did not properly go to the Court of Common Pleas is the place where the accident happened. *R. S.* 34:15–66; *Frank Desiderio Sons, Inc., v. Blunt,* 11 *N. J. Misc.* 494 *(Sup. Ct.* 1933); *Steinmetz v. Snead & Co.,* 123 *N. J. L.* 138 *(Sup. Ct.* 1939). Although death suddenly struck the decedent while he was driving on the New York side, the incidents which are counted upon as an accident all occurred within the State of New Jersey. The suggestion that the decedent's remarks about pain were directed toward pain then present is not supported by the proofs. There was nothing in the driving of the truck with its trailer through so much of the tunnel as lies within the State of New York that varied in the slightest degree from the usual incidents of the employment or that involved any unusual physical or mental exertion. Moreover, assuming, for the purposes of the argument, that the case should not have been moved to the Common Pleas but should have been taken direct by *certiorari* to the Supreme Court, the appellant was not harmed because the case was decided on appeal by the body which succeeded the Supreme Court in that jurisdiction. The Appellate Division, acting in the stead of the former Supreme Court, made the decision.

██ The direction of the statute that the determination of the county court shall be made within ninety days after the filing of the transcript is directory. *Ten Eleven Corporation v. Brunner,* 135 *N. J. L.* 558 *(Sup. Ct.* 1947); *Weinberger v. Erie Railroad Co.,* 86 *N. J. L.* 259 *(E. & A.* 1914). The weakness of the contention that the statutory direction is mandatory and that non-performance automatically results in a dismissal of the appeal becomes the more obvious if one poses the case that a claimant loses in the Bureau and upon appealing to the county courts is awarded a reversal *after* the ninety day period. We have no idea that the right of recovery under the Workmen's Compensation Act was intended by the Legislature to be denied the claimant

by the failure of the county court to observe the statutory period in filing its decision. The same reasoning must be applied to both sides.

We conclude that the judgment below should be affirmed.

HEHER, J. (concurring). I do not subscribe to the view that compensation is not recoverable under the Workmen's Compensation Act (*R. S.* 34:15–7 *et seq.*) unless there has been an injury attributable to an event or happening "beyond the mere employment itself." An event or happening "beyond" the employment would plainly not be an incident of the service; and an accident does not arise out of the employment in the statutory view unless the risk is reasonably incident to the employment. The legislative purpose was to provide for the hazard of accident within the range of the servant's work. A compensable risk may be either an ordinary one, directly connected with the employment, or one extraordinary in character, indirectly connected therewith because of its special nature; but unless the hazard be either the one or the other, the accident is not due to the employment. In either of such events, the happening is imputable to the employment, as one within the service, and not beyond it, and therefore compensable. The critical inquiry is whether the danger is one to which the employee was exposed because of the nature of his employment; if it is, the accident is within the statutory class. *Geltman v. Reliable Linen & Supply Co.,* 128 *N. J. L.* 443 (*E. & A.* 1942).

The distinction between "usual" and "unusual" strains and exertions in classifying compensable and noncompensable hazards of employment is illusory, for it necessarily presupposes a standard of exertion, varying in every trade and occupation. It is an impracticable rule plainly at odds with the statutory concept of an accident bearing a causal relation to the employment. Does the rule have reference to an occurrence that is not incidental to the employment, and therefore beyond it? Or does it relate to strain or exertion that is incidental to the employment, but not usual in the doing of the work? If so, how would the degree of exertion be meas-

ured? And why should there be a distinction between usual and unusual strains if they are incidental to the employment? Is it not in either case a happening arising out of the employment? Here, for example, the majority of the Appellate Division deemed strain from "very hard labor" as not "an event or happening beyond the mere employment itself," if it was a "usual task in" the employment, and so not compensable, although a condition imputable to the employment alone. If the statutory category includes disabling injury resulting from the direct application of force in the performance of an ordinary service incident to the employment, such, for example, as the loss of a member, on what principle do we exclude an injury ensuing from the pressure of intervening indirect force? In either case, there is an injury traumatic in origin. There can be no difference in this regard between ordinary and extraordinary strain.

This doctrine has introduced into judicial administration a wholly arbitrary classification that is not to be found in the act. The statute was designed to afford compensation to the servant who suffers disability by reason of an accident attributable to the employment, or to his next of kin if death ensues; and the Legislature has enjoined a liberal construction to serve that end. It is immaterial whether the strain be usual or unusual; in either event, it satisfies the statutory definition of accident arising out of the employment. Great exertion may on occasion be required in the performance of duty incident to the employment. For example, a fireman hurriedly ascending a ladder with a heavy hose or other implement. And a policeman is ofttimes obliged to summon all his physical powers in the discharge of duty. And yet the happening in neither case was beyond the service, but rather the result of effort in the normal pursuit of the employment, in no sense unusual or extraordinary when the standard and demands of duty are considered. The examples might be multiplied. A rule that differentiates in this regard the usual from the unusual strain is an artificial and unworkable deviation from the interpretation given the basic provision of the the statute from its early days—an interpretation in accord

with that given the like clause of its English prototype. What becomes of the rule that legislative acquiescence is to be inferred from long continued judicial exposition of a statute?

But the finding of the majority of the Appellate Division is that the evidence does not establish strain or exertion of any degree as the causative agent of the workmen's death; and, in accordance with the ruling in *Grant v. Grant Casket Co.*, 2 N. J. 15 (1949), this finding of fact is deemed conclusive here.

Ordinarily, the function of the appellate court in the review of a judgment in an action at law is the correction of errors of law, and not the trial of the issue *de novo* on the record and the evidence returned therewith. *Rule* 1:2–20 of this court, adopted September 15, 1948, in the exercise of the rule-making power granted by the Constitution of 1947, authorizes the court to make "new or amended findings of fact" on a review of any cause involving issues of fact not determined by the verdict of a jury. This review is not the absolute right of the dissatisfied litigant. The power is purely permissive; and it would seem that its exercise is in the sound discretion of the court to serve the ends of essential justice in the individual case, usually where the findings of fact are palpably erroneous or new evidence is adduced under the court's original jurisdiction conferred by Article VI, section V, paragraph 3 of the Constitution of 1947. The rule enjoins due regard, in the exercise of this function, to the opportunity had by the trier of the facts to judge of the credibility of the witnesses.

There is no occasion to invoke that rule here. The proofs did not convince the Appellate Division, exercising the reviewing power conferred by *Rules* 3:52–1, 3:81–13, that the fatal seizure was induced by the pressure of strain attending the service; and I am unable to say that this state of nonconviction was the result of plain error in the appraisal of the evidence.

The cardiologists concurred in the view that if intervening strain was the cause of death, there would have been unmistakable symptoms of a cardiac disturbance at the time of or

very shortly after the exertion, not longer than twenty minutes, or a half hour at the most. Respondent's cardiologists were of opinion that dissolution was the result of a coronary occlusion following a thrombus suffered in the early morning of the day in question, several hours before the decedent began work, and that if strain had contributed to the fatal attack, symptoms of the condition would have been manifest directly after the effort, for the evidences of coronary insufficiency are definite and immediate. Appellant's cardiologist was convinced that the early morning seizure was merely an anginal spasm and that death came from a myocardial infarction traceable to supervening effort and strain. He conceded that if such was the case, marked evidences of the strain would have been revealed within twenty minutes after its occurrence, one half hour at the outside. The proofs are not clear that there were such "bridging symptoms." The preponderant medical view is that there are immediate demonstrable evidences of strain or effort resulting in cardiac failure.

The deceased workman was afflicted with coronary sclerosis. There is a presumption that disease alone was the cause of death; and a finding that the proofs are not of a countervailing quality cannot be deemed to be contrary to the evidence. The claimant's cardiologist testified that seven of every ten sudden deaths are due to myocardial infarction. I cannot say from the evidence that the fatal seizure was not the climax of the normal progress of disease, the culmination of cardiac failure, but rather the result of strain or effort upon the diseased heart while the workman was in the pursuit of the master's service. Mere possibility is not enough to satisfy the legal standard of proof. The evidence must bring the existence of the requisite causal relationship within the bounds of reasonable inference, or the burden of proof is not sustained. Each case is judged by the particular facts and circumstances and the preponderant medical opinion. The quality of the proofs is determinative.

I join in the opinion of Mr. Justice Case on the remaining questions raised.

I concur in the affirmance of the judgment.

WACHENFELD, J. (dissenting). In a concurring opinion Justice Heher calls attention to *Rule* 1:2–20 of this court adopted September 15, 1948, authorizing the court to make new or amended findings of fact on review of any case involving issues of fact not determined by the verdict of the jury. This review, he says, is not the absolute right of dissatisfied litigants but a power which is purely permissive and "it would seem that its exercise is in the sound discretion of the court to serve the ends of essential justice in the individual case * * *." I believe this correctly portrays the purpose and the intent of the rule in question and, as far as I am concerned, compels me to take it into consideration in disposing of the case *sub judice.*

The law is settled by *Lohndorf v. Peper Bros. Paint Co.,* 134 *N. J. L.* 156 (*Sup. Ct.* 1946); affirmed, 135 *N. J. L.* 352 (*E & A.* 1947), and *Seiken v. Todd Dry Dock, Inc.,* 2 *N. J.* 469 (*Sup. Ct.* 1949). In considering the case it must be remembered that both the Bureau and the County Court came to the conclusion that the strain to which the decedent was subjected on the morning in question was unusual and not that ordinarily exerted by a truck driver in the usual course of his employment. This was a determination of fact which should not be lightly disturbed upon appeal unless there was no evidence to justify or warrant the findings so made. The Appellate Division reversed the judgment obtained but there was a dissenting vote and an analysis of the judicial determinations below on a numerical basis indicates that three different judges found the appellant was entitled to compensation while only two decided to the contrary. This, of course, is not controlling but it indicates the difficulty encountered in the application of the legal principles to the facts involved.

In my opinion, under these circumstances *Rule* 1:2–20 should be invoked and a revaluation of the evidence made to make certain "essential justice" is done. Applying that rule, I cannot agree with the decision of the Appellate Court. On the morning in question there had been a snowstorm, the first of the season apparently, amounting to 2.8 inches, and in

order to accomplish what had to be done the shoveling of considerable snow and the carrying of ashes were required so that the decedent could obtain traction and hook up the seven and a half ton tractor to the twenty-four foot long trailer loaded with fifteen tons of paper. After this difficulty had been surmounted, the pony wheels had to be jacked up, requiring some twenty to twenty-five turns of the hand crank. It was cold, the temperature was at freezing and the grease and the gears of the pony wheels were frozen and very hard to roll up. To overcome these unexpected hazards, from the testimony as I read it, there was an unusual exertion by the decedent which justified a recovery.

I am therefore to reverse. Mr. Justice Burling authorizes me to say he is in accord with this dissenting opinion.

HEHER, J., concurring in result.

*For affirmance*—Justices CASE, HEHER, OLIPHANT and ACKERSON—4.

*For reversal*—Justices WACHENFELD and BURLING—2.