SOPHIE MERGEL, PETITIONER-APPELLANT, v. NEW JERSEY CONVEYORS CORP., RESPONDENT-RESPONDENT.

Argued January 25, 1954—Reargued February 15, 1954—Decided March 22, 1954.

*Mr. Robert C. Gruhin* argued the cause for the appellant (*Mr. Morris Edelstein*, attorney).

*Mr. John W. O'Brien* argued the cause for the respondent (*Messrs. O'Brien, Brett & O'Brien*, attorneys).

The opinion of the court was delivered by

OLIPHANT, J.   This is an appeal by a dependent widow from a judgment of the Hudson County Court, reversing a determination in her favor of the Workmen's Compensation Division of the Department of Labor.   We granted certification on our own motion while the appeal was pending before the Appellate Division.   It is what is commonly called a "heart" case.

Petitioner's decedent husband, 53 years of age, was a millwright who previous to his death had been in good physical condition with no previous history of a heart ailment.   He was not a regular employee of the respondent but, on July 23, 1951, was sent from his union with other co-workers and assigned by the respondent to the work of installing a conveyor system in the Colgate-Palmolive-Peet plant in Jersey City.   He worked until July 30 and on that morning began

work at 8:00 o'clock. He and his partner were "bolting up overhead." He was working from a high ladder and it was difficult for him to reach the drilling area and the conveyor because of the lack of a scaffold due to the piling up of cartons of Colgate products. The existing conditions made it necessary for the decedent to reach out to the side and overhead about three feet in order to drill the holes in the ceiling by hand, using for that purpose a hammer and star drill. After the holes were drilled the conveyor section would be fastened into them. There is testimony by a fellow worker that the manner in which the work had to be done was not only difficult but was "something I had never seen done before"; the reaching up "We never do that kind of business." "We always have room."

While it is true that the work being done was in the general field of that undertaken by millwrights, the petitioner's proof disclosed special conditions here which made the work extremely difficult to perform, the cramped working space, the lack of a scaffold and the heat. The temperature was between 80 and 85 degrees, there was little ventilation and the work was being performed close to the ceiling. It is a fact of practical common knowledge that ceiling temperature is higher than floor temperature.

On the morning in question the decedent had been reaching out to drill and plug holes when at 9:30 he complained of not feeling well and "funny." He apparently returned to work, later complained to his partner, his brother-in-law, about not feeling well and at 11:15 came down the ladder and seemed to be "all in." There is testimony that what decedent was doing just before his remarks about not feeling well was caused "by a lot of strain on the body—reaching, in these conditions." Decedent was perspiring profusely, his face had a green color and his eyes were in a very olive stage. Although the foreman testified that he looked "all right," he advised him to go home. He left the plant at 11:30 A. M. and about 1:50 P. M. he was found dead on the Exchange Place platform of the Hudson and Manhattan Tubes, a three-minute walk from the plant.

Employers are not insurers of the lives, health and well being of their employees. The Legislature has not yet decreed that every death occurring or injury sustained in employment must be compensated for by the employer. The statutes and the decisional law interpreting them lay down the rules under which compensation may be awarded, and the well-settled rule as applied to "heart" cases is that there is a presumption that death from heart disease results from natural causes and that a petitioner has the burden of overcoming that presumption and to establish that the death was the result of an event or happening beyond the mere employment itself which brings about the final result or contributes thereto and without which the injury or death would not have resulted. The evidence must preponderate in favor of the tendered hypothesis. *Lohndorf v. Peper Bros. Paint Co.*, 134 *N. J. L.* 156 (*Sup. Ct.* 1946), affirmed 135 *N. J. L.* 352 (*E. & A.* 1947); *Ames v. Sheffield Farms Co., Inc.*, 137 *N. J. L.* 336 (*Sup. Ct.* 1948), affirmed 1 *N. J.* 11 (1948); *Seiken v. Todd Dry Dock, Inc.*, 2 *N. J.* 469 (1949); *Grassgreen v. Ridgeley Sportswear Mfg. Co.*, 2 *N. J. Super.* 62 (*App. Div.* 1949).

The decision in each case of this type must necessarily depend on its own particular facts, and we conclude that here there was an event or happening beyond the mere employment itself which brought about decedent's death. Millwrights, such as this decedent was, have no permanent employers; their work takes them into many plants and factories. There is no standard performance of work so as to fix it as usual or unusual. The working conditions here were difficult and not those usually met with. Events which happened beyond his mere employment, the restricted area of work, the lack of a scaffold, the necessity of reaching out and up to drill the holes and attach the conveyors, and the heat are factors which persuade us that the decedent was caused to put forth a greater expenditure of effort which put upon him a greater strain than that to which he was accustomed in his ordinary activities as a millwright. *Cf. Seiken v. Todd Dry Dock, Inc., supra; Molnar v. American*

*Smelting & Refining Co.*, 127 *N. J. L.* 118 (*Sup. Ct.* 1941), affirmed 128 *N. J. L.* 11 (*E. & A.* 1942).

Because the decedent had performed these activities for several days prior to his death does not materially affect the situation. Because one performs unusual duties over a span of several days does not convert those duties into the usual ones and does not establish *per se* that the work is no longer "unusual exertion."

The medical testimony in the case was in dispute and it will serve no useful purpose to detail it here. However, we are satisfied that the petitioner showed by the greater weight of the probabilities that her decedent's death resulted from a coronary incident causally related to his employment by reason of the unusual strain undergone by him on the morning of July 30, 1951. Conclusive proof can seldom be offered and is not requisite. The standard is probability rather than certainty and if under the evidence the tendered hypothesis becomes a rational inference based upon a preponderance of probabilities, the burden of proof is sustained. *Gilbert v. Gilbert Machine Works, Inc.*, 122 *N. J. L.* 533 (*Sup. Ct.* 1939); *Green v. Simpson & Brown Construction Co.*, 13 *N. J.* 292 (1953).

The judgment of the Hudson County Court is reversed and the cause remanded to the Workmen's Compensation Division for the entry of judgment in conformity with this opinion.

WILLIAM J. BRENNAN, JR., J. (concurring). I state my concurrence separately because I regard as wholly illusory the distinction between usual and unusual strains and exertions which since *Lohndorf v. Peper Bros. Paint Co.*, 135 *N. J. L.* 352 (*E. & A.* 1947), has been the test of compensability in heart cases. I share with Mr. Justice Heher and Mr. Justice Jacobs the view that if the injury occurred by reason of the strain at work, whatever the degree of the strain, there is an accident in the statutory sense and there is no occasion for an inquiry whether the strain was an event or happening beyond the mere employment itself. I sub-

scribe fully to Mr. Justice Heher's persuasive reasoning in support of that view in his concurring opinions in the *Lohndorf* case and in *Temple v. Storch Trucking Co.*, 3 *N. J.* 42, 46 (1949). See also his dissenting opinion in the first *Neylon* case, *Neylon v. Ford Motor Company*, 8 *N. J.* 586, 594 (1952).

Mr. Justice Jacobs aligned himself with that position in his opinion on the rehearing of the *Neylon* case, *Neylon v. Ford Motor Company*, 10 *N. J.* 325, 327 (1952). This is the first opportunity afforded me since my appointment to this court to record my agreement with it. Having sat in the *Neylon* case as a judge of the Appellate Division, I did not sit on the rehearing of the appeal here.

Mr. Justice Heher and Mr. Justice Jacobs join me in the conclusion that the judgment of the Hudson County Court should be reversed and that of the Workmen's Compensation Division reinstated, as we are satisfied that decedent's attack and ensuing death resulted from the strain of his work.

WACHENFELD, J. (concurring). I am in accord with the result and the reasoning in the majority opinion, but because of the striking similarity in the legal and factual equations involved, I feel compelled to cite *Temple v. Storch Trucking Co.*, 3 *N. J.* 42 (1949), not mentioned in the majority opinion, and to observe the particular applicability of the dissenting opinion.

In that case compensation was denied, although both the Bureau and the County Court came to the conclusion that the strain to which the decedent was subjected on the morning in question was unusual and not that ordinarily exerted by a truck driver in the usual course of his employment.

The dissenting opinion stressed the point that "this was a determination of fact which should not be lightly disturbed upon appeal unless there was no evidence to justify or warrant the finding so made."

It set forth the unexpected hazards there encountered and the unusual exertion by the decedent which warranted an award to him.

I voted to reverse and grant compensation there for the same reasons which apparently presently impel the majority of the court to decide likewise in the pending case.

HEHER, WACHENFELD, JACOBS and BRENNAN, JJ., concurring in result.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.