HENRIETTA KREAM, PETITIONER-APPELLANT, v. PUBLIC
SERVICE COORDINATED TRANSPORT, RESPONDENT-
RESPONDENT.

Argued May 6, 1957—Decided June 10, 1957.

*Mr. Aaron Gordon* argued the cause for the appellant (*Mr. Milton Albert,* attorney).

*Mr. Henry J. Sorenson* argued the cause for the respondent (*Mr. David M. Sellick,* attorney).

The opinion of the court was delivered by

OLIPHANT, J.   This is an appeal from a judgment of the Superior Court, Appellate Division, which reversed a judgment of the County Court that affirmed an award of compensation to the petitioner-appellant for the death of her decedent husband.

Decedent, aged 50, was a bus driver of the respondent and had been in its employ for several years.   There is no proof in this case of a prior coronary involvement.   On February 2, 1952 he apparently left his home in good health around 9:00 o'clock and reported for work at the garage of the respondent at 20th Street and 16th Avenue, Newark, N. J.; took out his bus and went on his regular run at 9:58 A. M. Later, at 11:35 A. M., he called the dispatcher, Ulbrich, at the garage stating he was at the end of the run at Military Park and requested that he be relieved of duty because "he had been sweating and he had chills."   The decedent did not ask for medical attention and volunteered no information beyond saying he was having chills and fever and wanted to be relieved at the end of the particular run he was then starting.   He specifically asked to be relieved at 14th Avenue and 19th Street, which is the regular relief point.   When he had driven to work that morning before reporting to the garage he had parked his own automobile between 19th and 20th Streets on 14th Avenue.

The dispatcher, at about 11:37 A. M., told the relief driver, Wayda, to relieve the decedent as requested.   Wayda got his things together and then proceeded to the relief point,

a distance of some three blocks, and waited there for the arrival of the bus. He stated he got there about 11:50 and waited about five minutes for the bus, which finally came along and that he noticed the decedent Kream was sweating, which was unusual for that time of year, which was February. He testified, "I told Harry Kream to call up the company and have someone drive his car home," and that Kream answered "He did not want to be bothered * * * that he would go home himself." He left the bus and walked across the street to where his car was parked.

The decedent started to drive home in his own car and had gone several miles when he apparently lost consciousness and his car veered across the street out of control, ran into a hedge and came to a stop against a retaining wall. A direct eye witness, one Bloom, who was experienced in first aid, crawled into the car to give aid and noticed that Kream was bleeding from the mouth. He stayed with him until he died, which was about five minutes later and before the police arrived. He fixes the time very definitely as shortly after noontime, because a minute or two before the accident he was quite startled when the air raid siren went off just as he was passing the siren. A careful evaluation of the testimony supports the conclusions below that little weight should be given to testimony of a witness for the respondent that the decedent had gone back to the garage and visited for awhile before starting for home.

An autopsy was performed on the body about two hours after death. The certification by the medical examiner indicates that the autopsy showed, among other things, "occlusive coronary arteriosclerosis." The "autopsy protocol" states, under item "15. Coronary Arteries"; "* * * one area of complete occlusion in upper anterior descending branch. Another area of occlusion in a large branch of the circumflex near its origin. No thrombi." The "primary cause of death" is given as "coronary arteriosclerosis, severe, occlusive." There was no involvement of the heart muscle.

The appellant did not press her compensation claim in the original instance, but instituted a common law action on

the theory of *Szabo v. Pennsylvania R. Co.,* 132 *N. J. L.* 331 (*E. & A.* 1945), alleging that the respondent was negligent in failing to provide medical treatment for its employee in an emergency and should have put in the reach of such stricken employee medical care which could have saved his life or possibly avoided further bodily harm. The trial court directed a verdict in favor of the respondent in that action. The same proofs put in in that case are part of the record in the compensation hearing below and here.

It is perfectly clear from the record that it was never brought to the attention of the dispatcher that the decedent was seriously ill. All that the dispatcher knew was that he was sweating and having chills; neither was he aware that the decedent was undergoing a coronary attack of a severe nature, as was later indicated by the autopsy, nor was there any prior history known to either the dispatcher or the decedent of a similar attack.

The medical experts disagreed as to whether the employment was a competent producing cause in aggravating the attack of acute coronary insufficiency. They were in agreement that the decedent had such an acute attack and that he had a general condition of arteriosclerosis so that, if he were in the throes of a cardiac vascular attack, the driving of the bus or in fact any exertion or activity would have contributed to the final end result, which was his death. In the type of attack he suffered complete rest was the only thing that could have helped.

The Appellate Division found the record was clear that in driving the bus from Military Park to the relief point the decedent was doing his everyday job in the normal manner, hence there was no unusual strain or exertion with respect to the work done. It also found there was nothing in the proof to show that the decedent realized the serious nature of his illness, or any indication that he was suffering from emotional or nervous strain. It points out that the fact he drove the bus to the relief point on his own suggestion and there rejected advice that he allow himself to be driven

home by some one else, was indicative to the contrary. As to the appellant's contention that the effort of driving the bus, while ordinarily not an unusual strain, became such when undertaken by a person then in fact undergoing a coronary attack, whether or not he knew what kind of illness had seized him, the Appellate Division held this did not meet the intent of the line of decisions headed by *Lohndorf v. Peper Bros. Paint Co.*, 134 *N. J. L.* 156 (*Sup. Ct.* 1946), affirmed 135 *N. J. L.* 352 (*E. & A.* 1947).

Appellant argues, as he did below, that the inquiry here is: Shall compensation be denied to one who drives a bus in the midst of and during a heart attack and who meets with injury or death as a result of such work, even though driving a bus was his regular employment? Of course, this statement of the proposition assumes that certain facts have been established.

In the ordinary course of events death normally ensues or results from natural causes. In many actions, both civil and criminal, where the question arises whether the death resulted from other than natural causes, the one who asserts such a proposition has the burden of proving it. Thus, we have held in compensation cases that there is a presumption that death from heart disease results from natural causes and the petitioner has the burden of proving that the death resulted from an accident arising out of and in the course of the employment. In order for the death to be compensable the evidence must preponderate in favor of such tendered hypotheses. *Mergel v. New Jersey Conveyors Corp.*, 14 *N. J.* 609, 613 (1954).

In testing whether the petitioner has maintained the burden of proof we have held that the standard as to the quality of the evidence is probability rather than certainty, and if under the evidence the tendered hypotheses become a rational inference based upon the preponderance of probabilities the burden of proof is sustained. *Gilbert v. Gilbert Machine Works, Inc.*, 122 *N. J. L.* 533 (*Sup. Ct.* 1939); *Green v. Simpson & Brown Construction Co.*, 14 *N. J.* 66, 69 (1953); *Mergel v. New Jersey Conveyors Corp., supra.*

On the proofs before this court any inference that may be drawn would have to be based upon one of several possibilities. We are left to speculate as to what caused the original attack and when the onset came. No rational inference based upon preponderance of probabilities can be drawn from the medical testimony as to what particular act of the decedent after the onset of the attack could have been a causative factor, if any, in the aggravation thereof. The only probable inference that can be drawn from the medical testimony is that any bit of exertion, either connected with or not connected with the employment, could have been an inducing factor in the fatal result here.

We cannot speculate as to whether any exertion created by getting out of the seat of the bus at the end of the line, or driving the bus or walking from the bus to the parked car and then driving several miles before the fatal spasm in the attack could have been the inducing factor. There is absolutely no proof in this case that any act related to the employment induced the onset of the original attack of which the original chills and perspiration are but probable symptoms.

We realize the difficulty of obtaining proofs in a situation such as this, but the Legislature has not decreed that every death occurring or injury sustained in employment must be compensated by the employer and until such time, the burden of proof established by the cases must be sustained by the petitioner. In this case it was not.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD and BURLING—4.

*For reversal*—Justices HEHER, JACOBS and WEINTRAUB—3.