Merrley Marie **LOVE**, John Henry Love, Jr., and Patty Ann Love, Appellants,

v.

Gerald E. **LAND** d/b/a Land Roofing Company and Ocean Accident and Guarantee Corporation, Respondents.

No. 23437.

Kansas City Court of Appeals.

Missouri.

April 2, 1962.

Hensley, Rahm & Braton, Holden, for appellants.

Jack B. Robertson, Rogers, Field & Gentry, Kansas City, for respondents.

MAUGHMER, Commissioner.

Appellants, the widow and minor children of John Henry Love, deceased, appeal from the circuit court judgment under which they were denied recovery of workmen's compensation death benefits.

It was stipulated or admitted that on March 16, 1959, John Henry Love was an employee of defendant Gerald E. Land, d/b/a Land Roofing Company; that this company at the time was operating under the provisions of the Missouri Workmen's Compensation Law, V.A.M.S. § 287.010 et seq.; that defendant Ocean Accident and Guarantee Corporation was insurer; that the employer had due notice of Mr. Love's death on March 16, 1959, and that a claim for compensation benefits was timely filed. While the parties did not agree on the amount of the average weekly wage, the only issue involved as to liability and on this appeal is whether Love's death was the result of an accident arising out of and in the course of his employment.

The award of the referee was for claimants. On appeal the commission unanimously reversed the referee, found that deceased "did not sustain an accident on or about March 16, 1959, arising out of and in the course of his employment", and entered a final award denying compensation. On appeal the circuit court affirmed the commission.

The duty and scope of review by this court and by the circuit court in a workmen's compensation case were well and fully stated in Long v. Mississippi Lime Co. of Mo. et al., Mo.App., 257 S.W. 2d 167, 170:

"An appellate court, in reviewing the evidence upon the basis of which the industrial commission made its award, must view the evidence in the light most favorable to the successful party below. Harper v. Home Imp. Co., Mo.Sup., 235 S.W.2d 558. Neither the circuit court nor the appellate

court may substitute its judgment on the evidence for that of the commission. Both courts are authorized and bound to decide whether the commission reasonably could have made its findings and reached its result upon consideration of all of the evidence before it, i. e. whether the award made by the commission is supported by competent and substantial evidence upon the whole record, Constitution of 1945, Art. V, § 22, V.A.M.S. (and cases cited)".

■ The burden was on claimants to show not only that Mr. Love suffered an accidental injury arising out of and in the course of his employment, but that his death resulted from such injury. Kerby v. Missouri State Highway Commission et al., Mo.App., 238 S.W.2d 464, 469.

■ John Henry Love, aged 33 years, from 1953 until his death, was an employee of defendant company, and was generally engaged in working on roofs, especially shingling and "hot patching". On March 16, 1959, Mr. Love and a fellow employee Donald G. Francey were doing a "guttering job" on a farm house. Their work included repairing the guttering. They used a hammer, a chisel and got up to the gutters by means of an extension ladder. On this particular day these men worked through the morning, then ate their noon meal at a restaurant and went back to the job at about 1:00 or 1:30 p. m. At this time, according to Mr. Francey, it was necessary to "cut a hole in the gutter, so the water would drain out and let it dry a little bit". Mr. Francey said the house eaves extended out from the walls "a good two and one-half feet", so that a workman on the ladder and cutting a hole in the gutter would not be working directly overhead but would have to "stand on the ladder, bracing with his legs" and turn partly sideways and work over his head and to some extent back of his head. This work procedure had been followed on the other side of the house that morning, with Mr. Love up on

the ladder. Mr. Francey stated that this was not their usual kind of work.

When these men started to resume work on this particular afternoon, Mr. Love took some tin cutters and went up the ladder. Mr. Francey was holding the bottom of the ladder and said: "I thought he was just going on as usual and cut the hole; I thought maybe he was just resting or something * * *. He was kind of slumped over the ladder with his arm around the rung. There wasn't any movement". Mr. Francey said further that Mr. Love never got started working after his trip up the ladder with the cutters and performed no work at all at that time.

Mr. Francey got Mr. Love down and laid him on the ground. Dr. Jack Taylor, M. D., Kansas City, was called. He examined the patient at the scene. He could not obtain blood pressure and the heart sounds were not audible. He administered solucortef, a medication. A thoracotomy was performed, but no bleeding ensued from this chest incision. Cardiac massage and mouth to mouth insufflation were used. An ambulance was called but the patient died on the way to the hospital. Dr. Taylor prepared and signed the death certificate. Therein he stated:

"Death was caused by:

"Immediate cause (a) cardiac arrest due to (b) cardiac asystole due to (c) grand mal seizure".

Dr. Taylor testified that in his opinion Mr. Love suffered a grand mal seizure at the scene. He said such seizures are not commonly precipitated by any known event, but occur spontaneously. He was unable to give any cause for this particular seizure but said abnormal strain might reasonably be a precipitating factor.

Dr. C. G. Leitch, M. D., Blue Springs, Missouri, testified as an expert on behalf of appellants. Responsive to a hypothetical question he expressed an opinion that the cause of death was "circulatory col-

lapse, induced by the influence of the carotid sinus". He said this collapse occurred while the man was on the ladder performing his work and could have been induced by having his head turned back which resulted in pressure on these carotid sinuses. The doctor said: "It is both fantastic and highly speculative that this man had a grand mal seizure".

The defendant Gerald E. Land testified that Mr. Love worked for him for seven years or as long as he had operated the business, and that he had also worked for the preceding owner. He said that upon numerous occasions Mr. Love had made similar repairs on gutters using the same tools, including an extension ladder.

All of the evidence is that deceased did no actual work except climbing the ladder after his return from lunch. It is difficult, therefore, to conclude that his attack, whatever it was, was induced by some immediate "unusual and abnormal strain" for the simple reason that for at least an hour all he had done was eat his lunch, climb the ladder and maybe tilt his head back. Furthermore, we doubt that the evidence here *requires* a finding that this particular gutter repair work necessitated any unusual or abnormal strain. Such work, according to defendant Land, was a part of their regular activities and Mr. Francey had seen the deceased do such work on other occasions, the last time being that very morning. Mr. Love had worked for Mr. Land for seven years and in the business prior to that.

The two medical doctors who testified were not in accord. However, Dr. Taylor, the only physician who actually saw the deceased and who signed the death certificate, said death resulted from heart failure, resultant from a grand mal epileptic seizure. Moreover, we find no evidence at all that an accident, as the word is commonly understood, occurred. Webster's International Dictionary, Second Edition, defines "accident" as "An event that takes place without one's foresight or expectation; an undesigned, sudden or unexpected

event". There is no showing of an "accident" resultant from the actual work itself.

In support of their position that decedent suffered an "accident" because of "unusual working conditions" and because of the "unusual and abnormal nature of the work" appellants invite our attention to various cases in some of which the occurrences were ruled to be accidents, and claim the facts here are comparable. We shall consider those cases.

In Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61, claimant was lifting a heavy drain board and strained his back, resulting in a possible herniated intervertebral disc. The court held the abnormal strain was the event, and the back injury, the result. While an abnormal strain might be classified as an accident even though not preceded by a slip or fall, we cannot classify climbing a ladder after an hour off for lunch and tilting the head back as an abnormal strain and an accident. As to Smith v. Cascade Laundry Company et al., Mo.App., 335 S.W.2d 501, we there upheld a finding that a sour laundry solution causing claimant's hand to become inflamed was not an "accident" under the Workmen's Compensation Law.

The opinion in Mergel v. New Jersey Conveyors Corp., 14 N.J. 609, 103 A.2d 594, by the Supreme Court of New Jersey, more nearly supports appellants. In that case the employee was a millwright and temporarily assigned by respondent employer to the work of installing a conveyor system. Employee was assigned to "bolting up overhead". The court said:

"While it is true that the work being done was in the general field of that undertaken by millwrights, the petitioner's proof disclosed special conditions here which made the work extremely difficult to perform, the cramped working space, the lack of a scaffold and the heat. The temperature was between 80 and 85 degrees, there was little ventilation and the work was being performed close to the

ceiling. It is a fact of practical common knowledge that ceiling temperature is higher than floor temperature.

\* \* \* \* \* \*

"Events which happened beyond his mere employment, the restricted area of work, the lack of a scaffold, the necessity of reaching out and up to drill the holes and attach the conveyors, and the heat are factors which persuade us that the decedent was caused to put forth a greater expenditure of effort which put upon him a greater strain than that to which he was accustomed in his ordinary activities as a millwright".

We believe the facts in this New Jersey case are far more favorable to claimant from (1) the standpoint of lengthy, unusual and abnormal strain from that normally required and (2) from the standpoint that such strain caused the death because the millwright got too hot, felt "all in", was green in color and was finally sent home, all prior to his death.

We are unable to find that the commission's finding that decedent "did not sustain an accident on or about March 16, 1959, arising out of and in the course of his employment" is not supported by substantial evidence. The medical testimony of Dr. Taylor supports the commission's ruling. The other evidence, including the fact that decedent had not actually resumed work after lunch, makes it appear reasonable for a fact-finding body to conclude that the circulatory or respiratory attack or failure, grand mal, or something else which he suffered, was caused by conditions separate and apart from his work. Certainly it cannot be said that such conclusion is not supported by substantial evidence or that the overwhelming weight of the evidence is the other way.

The judgment of the circuit court affirming the award of the commission is by this court affirmed.

SPERRY, C., not sitting.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.