Edna Viola McCUE, As Dependent and Surviving Widow of Edward Vincent McCue (Employee), Respondent,

v.

STUDEBAKER AUTOMOTIVE SALES, INC., d/b/a Frontier Motors (Employer), and Zurich Insurance Company (Insurer), Appellants.

No. 24166.

Kansas City Court of Appeals.

Missouri.

April 5, 1965.

Ralph G. Trogdon, John R. Caslavka, Kansas City, Shughart, Thomson & Kilroy, Kansas City, of counsel, for appellants.

Bott, Sharp & Carey, Larry Worrall, Kansas City, for respondent.

MAUGHMER, Commissioner.

Claimant, Edna Viola McCue, the surviving widow and dependent of Edward Vincent McCue, automobile salesman who was killed in an automobile accident, was awarded a judgment for death benefits under the Workmen's Compensation Act of Missouri against his employer and its insurer. The award of the commission was affirmed by the circuit court. Both the employer and the insurer have appealed. The sole alleged error presented on appeal is that the employee's death did not arise out of and in the course of his employment.

It was stipulated and agreed that the employee was killed in an automobile accident on January 31, 1963, and at the time was an employee of defendant Studebaker Automotive Sales, Inc. d/b/a Frontier Motors, was working under the provisions of the Missouri Workmen's Compensation Law and that the employer's liability was fully insured by defendant Zurich Insurance Company. There was no dispute as to the amount of the weekly wage or that a proper claim had been timely filed. Actually appellants' sole contention is that at the time of the accident the employee was so completely under the influence of liquor or alcohol as to render it impossible for him physically and mentally to have been engaged in the course of his employment.

The fatal accident occurred at about 7:00 p. m. on the Intercity Viaduct between Kansas City, Kansas and Kansas City, Missouri, and while employee was traveling east. Mr. McCue was at all times furnished a Demonstrator for use in his work as a salesman and was operating such an automobile when he was killed.

On the day of the accident the employee went to work about 7:30 a. m. According to

the witness Fred V. Whitaker, used car manager for employer, McCue was "on the floor" from 8:30 a. m. until 2:00 p. m., when he left the show room at 2735 Main Street, Kansas City, Missouri. Whitaker said Mc-Cue told him when he left shortly after 2:00 p. m. that he had a 7:30 appointment that evening with a prospective customer at the company show room; that at about 4:00 or 4:30 p. m. McCue called by telephone, again mentioned the 7:30 appointment and inquired if Whitaker would be present that evening. Whitaker said Mc-Cue was "one of the top salesmen", that a man who "sells as many cars as McCue does, works thirteen, fourteen hours a day as a general diet". He said McCue's voice was normal during the telephone conversation, but that he had on at least two occasions sent him home "for drinking". On cross-examination Whitaker stated that the employee told him that "he was going to Kansas City, Kansas to see a man about a deal on a new car and he had made an appointment that evening".

Evert Appleberry, who identified himself as owner and operator, as of January 31, 1963, of the Appleberry Hardware, 1809 Minnesota Avenue, said McCue came to his place of business about 5:45 p. m. on that date to pay a bill; that they conversed; that McCue was in the store from 30 to 40 minutes; that he made a payment on his bill and they discussed the purchase of a Studebaker Lark for Appleberry's daughter. Mr. Appleberry stated that the direct route from his hardware store to Kansas City, Missouri would be "down Minnesota Avenue to the Intercity Viaduct" (where the accident occurred). He said McCue's conversation in the store was clear and coherent; that he did not stagger and that he drove his car out of the parking place with no trouble, although he detected "that he had been drinking".

The witness Sherman Thompson operated a restaurant at 1531½ Prospect, where beer is sold. He had known McCue for about six years. He said McCue called him on the telephone about 4:00 or 5:00 p. m. on the

day in question and made an appointment for "around 6:00 o'clock". The purpose of the appointment was to discuss the possible purchase of an automobile. He, too, said the direct route from Minnesota Avenue in Kansas City, Kansas to Kansas City, Missouri and his restaurant would be over the Intercity Viaduct. The appointment was not kept by McCue and Thompson learned of his death later that night.

Mrs. McCue, claimant, said that she and deceased were married on December 20, 1930, and that he was at home on the day of his death from about 5:30 p. m. and until 6:30 p. m. She said he told her he was going out to show a car and invited her to go along.

Three doctors were produced by appellants and testified. Dr. Richard C. Ibarra, M.D., deputy coroner, Wyandotte County, Kansas, was on duty at St. Margaret's Hospital, Kansas City, Kansas, and in the emergency room when the ambulance bearing Mr. McCue arrived after the accident. Dr. Ibarra pronounced him dead on arrival. He drew two blood samples, gave one to the Kansas City, Missouri police and one to Dr. Lauren Moriarty of Medical Laboratories Associated. An autopsy was performed by Dr. Ralph J. Rettenmaier, coroner.

Dr. John E. Johnson, M.D. of Medical Laboratories, with pathologists under his supervision, tested the sample of McCue's blood. The result in part was "Alcohol .175 milligrams percent. or .175 percent."

Dr. Ralph Emerson Duncan, M.D. has, since 1933, operated the Ralph Clinic, which specializes in treating alcoholism. He testified that McCue had been a patient at the Ralph Clinic from January 18, 1960 until January 28, 1960 on a continuous abstinence program. Dr. Duncan commented on the probable effect of various contents of alcohol in the blood, but pointed out that some persons, especially regular drinkers, develop a greater tolerance for it. A hypothetical question was put to Dr. Duncan, the chief assumed fact in which was that

McCue's blood test showed .175 percent alcohol. Dr. Duncan, in response, said this amount of alcohol would result in intoxication, inability to operate a motor vehicle safely and engage in a business sale or transaction only "in a very vague way". On cross-examination Dr. Duncan admitted that people carrying this amount of alcohol do drive automobiles without accidents, but he said nevertheless "that is not driving safely and efficiently".

The police report of the accident showed a head-on collision—left front of each vehicle—and with the McCue car about one-third over to the left of the center line. The report described the weather as "cloudy".

The finding of the referee was that the deceased "did not sustain an accident arising out of and in the course of his employment". On review the commission reversed the referee and found "the accident arose out of and in the course of the employment". The award of the commission was on appeal affirmed by the circuit court.

■ Appellants assert that claimant has the burden of proving that there was (1) an accident; (2–3) that the accident arose out of and in the course of the deceased's employment with the employer. We agree. Kerby v. Mo. State Highway Commission et al., Mo.App., 238 S.W.2d 464, 469; Love v. Land, Mo.App., 356 S.W.2d 105. An accident did occur. There is no controversy as to that occurrence. Whether or not it arose out of and in the course of the employment requires further study and discussion.

■ It is also the rule that an appellate court must view the evidence upon which the commission made its award in the light most favorable to the party which prevailed before the commission. Harper v. Home Imp. Co. et al., Mo., 235 S.W.2d 558; Howard v. Ford Motor Co., Mo.App., 363 S.W.2d 61, 64. Neither the circuit court nor this court may substitute its judgment for that of the commission. Each

of these courts may determine only if the award is supported by substantial, competent evidence. The reviewing court is restricted to deciding if the commission could have reasonably concluded as it did conclude. Howard v. Ford Motor Co., supra; Long v. Mississippi Lime Co. of Mo. et al., Mo.App., 257 S.W.2d 167, 170, and cases there cited.

Appellants rely heavily upon the opinion in O'Neil v. Fred Evens Motor Sales Co., Mo.App., 160 S.W.2d 775. It was there finally decided that the claim for workmen's compensation benefits should be denied for the reason that claimant, because of his drinking, could not have been physically and mentally engaged in his occupation. Claimant in that case, too, was an automobile salesman.

In the O'Neil case claimant was first involved in a minor automobile accident. He rested for a time and was then involved in a second accident—the one upon which his claim was based. Before and between these two accidents he had visited a tavern and imbibed intoxicating liquor. He told physicians that his mind was a blank from the time of the first accident until he awoke in the hospital following the second one. Thus there was more effective evidence and more satisfactory proof offered, we think, showing (1) intoxication and (2) deleterious effect upon the employee's physical and mental faculties, than was produced in our case. Second, the trier and finder of the facts—that is, the commission—found against O'Neil and the circuit court reversed. The appellate court ruled the evidence presented an issue of fact and applying the hard and fast rule that the commission's conclusion on a factual controversy must be sustained if there is support for it in the evidence, reversed the circuit court, reinstated the award and refused, quite properly, to determine the factual dispute de novo. It appears to us that the evidence in the O'Neil case is substantially different from the evidence in the matter before us. The legal conclusion there reached is also, we think, authority for

affirming rather than for reversing the commission, since the opinion holds squarely that it is the prerogative of the commission to determine the weight of the evidence and the credibility of the witnesses and that its ultimate finding in that field must not be overturned on review or appeal, if it was supported by substantial evidence, even though the circuit or appellate court might come to a different conclusion.

In the instant case claimant produced substantial, credible evidence that McCue was a top automobile salesman who regularly met prospective customers after normal working hours; that he visited likely purchasers on the day of the accident and had a definite appointment with one on that very evening. It was shown that he had discussed a sale with Mr. Appleberry at his hardware store about 6:00 o'clock. Mr. McCue actually operated his automobile over city streets and in and out of parking lots immediately prior to the fatal event.

We believe sufficient credible evidence was presented to authorize the commission to find, as it did find, that the accident and resultant injury arose out of and in the course of deceased's employment. Certainly we cannot rule as a matter of law that the award is without sufficient evidentiary support and basis. Moreover, under the facts here presented we concur with the conclusion of the commission.

The judgment affirming the award of the commission should be and it is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.